1 | **COHELAN KHOURY & SINGER**
Isam C. Khoury (SBN 58769)
2 |   ikhoury@ckslaw.com
Michael D. Singer (SBN 115301)
3 |   msinger@ckslaw.com
Diana M. Khoury (SBN 128643)
4 |   dkhoury@ckslaw.com
Kristina De La Rosa (SBN 279821)
5 |   kdelarosa@ckslaw.com
605 C Street, Suite 200
6 | San Diego, California 92101
Telephone: (619) 595-3001/Facsimile: (619) 595-3000
7 |

8 | **LAW OFFICES OF SAHAG MAJARIAN II**
Sahag Majarian, II (SBN 146621)
9 | sahagii@aol.com
18250 Ventura Blvd.
10 | Tarzana, California 91356
Telephone: (818) 609-0807/Facsimile: (818) 609-0892
11 |

12 | Attorneys for Plaintiff Jose Contreras, on behalf of himself
13 | and other similarly-situated employees

14 | **UNITED STATES DISTRICT COURT**

15 | **CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| JOSE CONTRERAS, on behalf of himself and other similarly-situated employees, | CASE NO. 5:19-cv-00641-GW (SHKx) |
| | **CLASS AND PAGA ACTION** |
| Plaintiff, | **DECLARATION OF ISAM C. KHOURY IN SUPPORT OF MOTION FOR ORDER GRANTING CLASS ACTION SETTLEMENT; CONDITIONAL CERTIFICATION, APPROVAL OF CLASS NOTICE, AND SETTING OF FINAL APPROVAL HEARING DATE** |
| vs. | |
| AMERICOLD LOGISTICS, LLC, a Delaware Limited Liability Company; and DOES 1 through 10, inclusive, | Date:       March 30, 2020 |
| | Time:       8:30 a.m. |
| | Courtroom:  9 D (9th Floor) |
| Defendants. | Judge:       The Hon. George H. Wu |
| | Filed:       February 22, 2019 |
| | Removed:    April 10, 2019 |
| | Trial date:  Not Set |

I, Isam C. Khoury, declare as follows:

1.    I am a Partner with the law firm of Cohelan Khoury & Singer, co-counsel of record for Plaintiff. I have been an attorney on this case since its inception. The following facts are within my personal knowledge and if called to testify I could and would competently testify thereto.

2.    I am a 1973 Hastings School of Law graduate and was admitted to the California State Bar in 1974 and am admitted to practice in all state courts in California and in the all federal courts in California, as well as the First Circuit Court of the State of Hawaii and the United States Court of Appeals for Sixth Circuit.

3.    In 1981, Timothy D. Cohelan and I formed Cohelan & Khoury, a Partnership of Professional Law Corporations, and within a few years began to focus on class actions. In 2009, Cohelan & Khoury became Cohelan Khoury & Singer. Our firm represents plaintiffs in complex, class and representative action litigation, including wage and hour, labor and employment, antitrust, consumer protection, construction defect and other public interest type class and representative actions. Attached as Exhibit 2 is a copy of my firm's Resume.

4.    I, along with Partner Diana M. Khoury have been selected by our peers based on ethics, experience and reputation as Super Lawyers in Civil Litigation by the Southern California Super Lawyers Magazine for the years 2010 through 2018. Michael D. Singer, Managing Partner, was named to the Daily Journal 2012, 2013, and 2018 list of Top California Labor and Employment Attorneys and selected to the Southern California Super Lawyers in 2010, 2012-2019. I am AV rated by Martindale-Hubbell, as are many attorneys in our firm

5.    Cohelan Khoury & Singer has been certified by the State Bar of California to provide the Mandatory Continuing Legal Education activity entitled "Litigating California Class Actions" and has conducted MCLE certified seminars on this topic. Senior Partner, Timothy D. Cohelan, is the author of <u>Cohelan on</u>

California Class Actions (1997-2019, updated annually), part of Thomson Reuters Expert Series. Managing Partner, Michael D. Singer, is a contributing author on the CEB publication California Wage and Hour Law: Compliance and Litigation (2010-2019, updated annually), in which he wrote the opening chapter overview on California Wage and Hour laws, including the public policy underpinnings for those laws, and the PAGA Claim chapter. Mr. Singer has served as a columnist for the California State Bar, Litigation Section on wage and hour litigation and has contributed articles on wage and hour and class action issues through the years to numerous California publications. Mr. Singer typically lectures several times per year for continuing education courses on wage and hour and class action issues at events in San Diego, Orange County, Los Angeles, and San Francisco. Mr. Singer regularly contributes amicus curiae briefs on class action and employment issues in the California Supreme Court and Courts of Appeal. In his capacity as Amicus lesion for California Employment Lawyers Association, he coordinated, drafted or co-drafted amicus letters and briefs on a wide range of labor law issues in the rapidly developing decisional law, supporting Review in the Supreme Court, and publication or depublication of Court of Appeal decisions. He has been engaged in the practice of labor and employment law since 2000, handling well over 200 wage and hour class actions and several individual labor cases, and has litigated several types of employment actions, including complex ERISA employee welfare benefit plan cases, as well as wage and hour class actions before Federal and State Courts in California. In 2014, Mr. Singer and J. Jason Hill tried a wage and hour class action involving claims for illegally deducted wages and unreimbursed expenses in the matter of *Dilts v Penske Logistics LLC, Inc*. We successfully appealed the trial court ruling in *Dilts* finding state laws preempted by the FAAAA for truck drivers. Mr. Singer has participated in over 50 appellate cases and argued writs and appeals before several California District Courts of Appeal, arguing for plaintiffs on rehearing in *Brinker International Inc. v. Superior Court* before the Fourth District

2

Declaration of Isam C. Khoury ISO Motion for Order Granting
Preliminary Approval of Class Action Settlement                    CASE NO. 5:19-cv-00641-GW (SHKx)

Court of Appeal, as well as federal appeals in the Second, Third, and Ninth Circuit Courts of Appeals. In addition, Mr. Singer has drafted numerous appellate briefs as the appellant, respondent, or amicus curiae in employment class and individual actions. As co-Class Counsel in *Brinker Restaurant Corp. v. Superior Court* [formerly reported at (2008)165 Cal.App.4th 25], Mr. Singer argued before the Fourth District Court of Appeal in May 2008 on transfer from the California Supreme Court, and co-authored the successful Petition for Review. My firm has successfully tried class cases, obtained appellate reversals of class certification denials *(Hicks v. Kaufman and Broad,* (2001) 89 Cal.App.4th 908), certified multiple wage and hour class.

6.     As a part of our overall firm philosophy lawyers perform community service and pro bono work. Firm volunteer work includes service through the Legal Aid at Work, San Diego Volunteer Lawyer Program, the San Diego County Bar Foundation and Consumer Attorneys of San Diego. For instance, Mr. Singer has served on the Legal Aid at Work Board of Directors since 2011. Mr. Cohelan served as the Chair of the San Diego Volunteer Lawyers Program from 2015-2018, and currently sits on the Board as past Chair. He completed 24 years of volunteer judicial service as a Judge Pro Tem of the San Diego Superior Court, and Diana M. Khoury has served on the San Diego County Bar Foundation's (SDCBF) Board of Directors since 2013. SDCBF is the 501(c)(3) charitable arm of the San Diego County Bar Association.  Furthermore, since admission to the California State Bar, Partner Diana M. Khoury has been a member of the San Diego County Bar Association, Consumer Attorneys of San Diego, Consumer Attorneys of California, and American Association for Justice serving on numerous committees through the years for these organizations. For six years from 2010 through 2015, Ms. Khoury served on the Board of Directors for Consumer Attorneys of San Diego, serving as chair of numerous committees throughout the years. Our firm's recent pro bono victories include a settlement which prohibits the City of San Diego from targeting

Declaration of Isam C. Khoury ISO Motion for Order Granting
Preliminary Approval of Class Action Settlement                    CASE NO. 5:19-cv-00641-GW (SHKx)

homeless people for illegal lodging tickets under Penal Code Section 467(j). (*Spencer v. City of San Diego*, USDC Case No 04CV-2314 BEN (WMC).) The *Spencer* settlement had the effect of increasing the number of available shelter beds in the City of San Diego.

7.     Cohelan Khoury & Singer has been appointed certified Class Counsel in the following contested proceedings: *Aguilar v. Atlantic Richfield, et al.*, San Diego Superior Court Case No. 00700810; *Andino v. Kaiser Foundation Hospitals*, Alameda Superior Court Case No. RG11580548; *Arellano, et al. v. Container Connection of Southern California, Inc.*, Los Angeles Superior Court Case No. BC500675; *BANK OF AMERICA WAGE AND HOUR EMPLOYMENT PRACTICES LITIGATION*, United States District Court, District of Kansas MDL Case No. 2138 (FLSA Condition Certification); *Czuchaj v. Conair Corporation*, United States District Court, Southern District of California Case No. 13CV1901; *Dilts, et al. v. Penske Logistics, L.L.C., et al.*, United States District Court, Southern District of California Case No. 08CV0318; *Englert, et al. v. AT&T Wireless Services, Inc., et al.*, Circuit Court of the Second Circuit, State of Hawaii Case No. 02-1-0074; *Evans v. Washington Mutual Bank*, Orange County Superior Court Case No. 02CC15415; *Filion v. Ethan Allen Retail Inc.*, United States District Court, Southern District of California Case No. 05CV2340; *Gerard v. Les Schwab Tire Centers of California, Inc.*, Sacramento Superior Court Case No. 2007-30000003; *Grana, et al. v. PICO Enterprises, Inc. dba Phyle Inventory Control Specialist and PICS* L.A.S.C. Case No. BC472891; *Gutierrez v. Save Mart Supermarkets* San Mateo Superior Case No. CIV530955; *Wilcox v Albertsons*, San Diego Superior Court Case No. GIC833922; *Gonzalez, et al. v. Freedom Communications, Inc. d/b/a The Orange County Register*, Orange County Superior Court Case No. 03CC08756; *Graham, et al. v. Overland Solutions, Inc.*, United States District Court, Southern District of California Case No. 10CV0672 (FLSA Conditional Certification); *Hicks v. Kaufman and Broad Home Corp.*, Los Angeles Superior Court Case No.

B198414; *Hohnbaum, et al. v. Brinker Restaurant Corporation, et al.,* San Diego Superior Court Case No. GIC834348; *KEMP, et al. v. CSEA, et al.,* Circuit Court of the First Circuit, State of Hawaii Case No. 98-3815-08; *LIBERTY MUTUAL OVERTIME CASES*, Los Angeles Superior Court Case No. JCCP 4234; *Mitchell, et al. v. Acosta, Inc., dba Acosta Sales and Marketing Company,* United States District Court, Central District of California Case No.11CV07196 (FLSA Conditional Certification); *Santana v. Rady Children's Hospital-San Diego*, San Diego Superior Court Case No. 37-2014-00022411; *Schaffer v. Rady Children's Hospital-San Diego*, San Diego Superior Court Case No. 337-2015-00022978; *Schneider, et al. v. Catholic Healthcare West*, San Francisco Superior Court Case No. CGC-10-506243; *Salucci v. Amada Senior Care, Inc.*, Orange County Superior Court Case No. 37-2015-00778081; *Smith v. California Pizza Kitchen,* San Diego Superior Court Case No. 37-2008-00083992; STEROID HORMONE PRODUCT CASES, Los Angeles Superior Court Case No. JCCP 4363; *Stevenson Aibangbee v. Victoria Apartments, et al.,* Los Angeles County Superior Court Case No. BC299498; *Swift v. Liebert Corp.,* Orange County Superior Court Case No. 00CC04588; *Sylvia, et al. v. Wells Fargo Home Mortgage, Inc.,* Orange County Superior Co Case No. 03CC05747; *Vaquero v. Ashley Furniture Industries, Inc., et al.,* United States District Court, Central District of California Case No. 12CV8590; *Vaquero v. Stoneledge Furniture LLC*, Los Angeles Superior Court Case No. BC522676; *Vazquez v. Kraft Heinz Foods Company*, Unites States District Court, Southern District of California Case No. 16-CV-02749; *Watson v. Raytheon Company,* United States District Court, Southern District of California Case No. 1OCV0634; and *Weigele v. FedEx Ground Package System, Inc.,* United States District Court, Southern District of California Case No. 06CV1330, among others, as well as being appointed Class Counsel in connection with well over 1,750 class action settlements.

       8.     As Class Counsel, Cohelan Khoury & Singer has actively commenced, prosecuted and concluded numerous state and federal class actions. Since 2016,

Cohelan Khoury & Singer has played a central role in the resolution of the following class action cases which have received final approval by the Court: (a) *Arellano, et al. v. Container Connection of Southern California, Inc.*, Los Angeles Superior Court, Case No. BC500675, Hon. Anne I. Jones; (b) *Castro v. Home Depot U.S.A., Inc.*, Los Angeles County Superior Court, Case No. BC577885, Hon. Elihu M. Berle; (c) *Czuchaj v. Conair Corporation*, United States District Court, Southern District of California, Case No. 13-CV-1901 BEN, Hon. Roger T. Benitez; (d) *Gardiner v. TSYS*, United States District Court, Central District of California, Case No. 18-cv-00415, Hon. David O. Carter; (e) *Grana v. PICO Enterprises, Inc.*, Los Angeles County Superior Court, Case No. BC472891, Hon. Stephanie M. Bowick; (f) *Gutierrez v. Save Mart Supermarkets*, San Mateo County Superior Court, Case No. CIV530955, Hon. Marie S. Weiner; (g) *Hernandez v. Workforce Enterprises WFE, Inc.*, Los Angeles County Superior Court Case No. BC590913, Hon. Elihu M. Berle; (h) *Hicks v. Poway Academy of Hair Design, Inc.*, San Diego County Superior Court, Case No. 2014-00026517, Hon. Ronald L. Styn; (i) *Klein v. Loomis Armored US, LLC*, San Bernardino County Superior Court, Case No. CIVDS1704547, Hon. David Cohn; (j) *Laureano v. The Art of Shaving*, Los Angeles Superior Court, Case No. BC550093, Hon. Amy D. Hogue; (k) *Magdaleno v. Shelly Automotive, LLC*, Orange County Superior Court Case No. 2013-0043958, Hon. Kim. G. Dunning; (l) *McGrath, et al. v. Wyndham Resort Development Corporation, et al.*, United States District Court, Southern District of California, Case. No. 15-CV-1631 JM, Hon. Jeffrey T. Miller; (m) *Mena v. Wolfgang Puck Catering*, Los Angeles County Superior Court Case No. BC582743, Hon. John Shepard Wiley, Jr.; (n) *Morales v. The Los Angeles Country Club*, Los Angeles Superior Court, Case No. BC566493, Hon. William F. Highberger; (o) *Nijmeh v. Bon Appetit Management Company, Inc.*, Santa Clara County Superior Court, Case No. 16CV294127, Hon. Thomas E. Kuhnle; (p) *Plascencia v. Aramark Services, Inc.*, Santa Clara County Superior Court, Case No. 2015-1-CV-288310, Hon. Brian C. Walsh; (q) *Plimpton v. Gordon*

*Trucking, Inc.*, San Bernardino County Superior Court, Case No. CIV-DS-1511918, Hon. Donald Alvarez; (r) *Raya v. Amazon*, United States District Court, Northern District of California, Case No. 15-CV-02005 MMC, Hon. Maxine M. Chesney; (s) *Rivas v. ESA Management*, United States District Court, Central District of California, Case No. 14-CV-5767, Hon. Dale S. Fischer; (t) *Rodriguez v Healthcare Partner Medical Group, Inc.*, Los Angeles Superior Court, Case No. BC541313, Hon. Kenneth Freeman; (u) *Ryan v. Dignity Health*, Sacramento County Superior Court Case No. 2013-00147371, Honorable Alan G. Perkins; (v) *Santana v. Rady Children's Hospital-San Diego*, San Diego Superior Court Case No. 37-2014-00022411, Hon. Joel R. Wohlfeil; (w) *Schaffer v. Rady Children's Hospital-San Diego*, San Diego Superior Court Case No. 337-2015-00022978; Hon. Joel R. Wohlfeil; (x) *Schneider v. Catholic Healthcare West*, San Francisco Superior Court, Case No. CGC-10-506243, Hon. Angela Bradstreet; (y) *Schwartz v Bank of the West*, San Francisco Superior Court, Case No. CGC-14-538955, Hon. Harold E. Kahn; (z) *Syed v. M.I. Swaco*, United States District Court, Eastern District of California, Case No. 12-CV-01718 DAD, Hon. Dale A. Drozd; (aa) *Vaquero, et al. v. Stoneledge Furniture, LLC*, Los Angeles Superior Court Case No. BC522676, Hon. Elihu M. Berle; (bb) *Walsh v. Cedars-Sinai Medical Center*, Los Angeles County Superior Court Case No. BC487290, Hon. William F. Highberger; among others.

9.     We consider ourselves experienced and qualified to evaluate the claims and viability of the defenses. That experience and those qualifications allowed our firm to assist in achieving an efficient resolution of the claims in this matter for the maximum non-reversionary Settlement Payment of $2,500,000 on behalf of the estimated 1,567 putative Class members employed at any time from February 22, 2015 through 120 days of December 18, 2020 or Preliminary Approval, whichever occurs first. The proposed Settlement is memorialized in the Joint Stipulation of Class Action Settlement and Release attached hereto as Exhibit 1.

10.     Plaintiff has alleged in this Action that Americold (1) failed to pay for all hours worked due to an unlawful rounding of policy which included the pre-and post-shift work and donning and doffing time; (2) failed to pay all overtime wages because it did not properly calculate the Class Member's regular rate of pay; (3) failed to provide compliant meal periods and rest breaks or pay premium pay in lieu thereof; (4) failed to pay vacation wages; and (5) derivative claims for failure to provide accurate and itemized wage statements and failure to pay all wages at separation of employment, and for civil penalties under the Private Attorneys General Act of 2004 ("PAGA").

11.     Plaintiff Jose Contreras was employed by Defendant Americold from September 13, 2013 to April 19, 2018 as a non-exempt, hourly paid forklift driver in Defendant's warehouse in Victorville, California.   At the time of Mr. Contreras separation of employment, he was earning $18.50 per hour and eligible for non-discretionary incentive pay bonuses, and shift premiums.

12.     The Class is defined as all individuals employed by Americold as non-exempt, hourly paid employees at any time during the period from February 22, 2015 through 120 days of mediation, or Preliminary Approval, whichever occurs first, ("Class Period"). There are an estimated 1,567 Class Members who worked an aggregate 130,086 Work Weeks during the Class Period.

13.     PAGA Members, a subgroup of the Class, are defined as those individuals who worked any time during the period from February 22, 2018 through 120 days of mediation, or Preliminary Approval, whichever occurs first, (PAGA Period"). There are an estimated 1,052 PAGA Members who worked an aggregate of 27,744 Pay Periods

14.     Americold paid Class Members every two weeks.  PAGA Members, will share the 25% of the $200,000 PAGA Payment, i.e. $50,000. pursuant to the PAGA, Labor Code § 2699, which provides that 75% of any PAGA Payment be paid to California's Labor Workforce and Development Agency, and the remaining

25% to be apportioned among the aggrieved employees, here, the PAGA Members.

15.    Plaintiff has alleged that although the policy is ostensibly facially neutral, additional policies regarding hours worked caused the rounding policy to be used in a manner to systemically undercompensate the Class. Plaintiff also claims Class Members were subject to formal discipline and penalized for clocking in more than 1 minute late.  Plaintiff alleges Class Members were not advised of the existence of any type of "grace" period.  The analysis of the records performed supported Plaintiff allegations that Americold's rounding policy caused 90.2% of all Class Members to lose more recorded time than gain.  Finally, after analysis of all Class Member time punches, Plaintiff claims a total of 31,282 net hours was underpaid, with 71.8% of all shifts affected so that the Americold benefitted while the Class Member suffered a loss of wages.

16.    Although the Americold's rounding policy itself is facially neutral, Plaintiff contends the additional policies resulted in the rounding policy from being applied in a fair and neutral manner. Plaintiff asserted that Americold's rounding policy essentially encompassed "only rounding down" so that only the employer/Americold benefits from it.  *Silva v. See's Candy Shops* (2016) 7 Cal. App. 5th 235, 249 (*See's Candy II*).  If and when applied in this manner, the end result, as Plaintiff claims, was an alleged amount of time in which Class Members were undercompensated.

17.    Plaintiff contends that Defendant failed to pay for pre- and post-shift work, including donning and doffing time.  Employees at Plaintiff's location were allegedly required to report to a pre-start meeting, which began at the beginning of the scheduled shift.  Plaintiff alleges that upon completion of the pre-start meeting, employees then immediately started working. To to be ready for the pre-start meeting, Class Members were required to change into the proper refrigeration cold gear, and to have performed their fork lift inspection prior to the start of their pre-

9

Declaration of Isam C. Khoury ISO Motion for Order Granting
Preliminary Approval of Class Action Settlement                                    CASE NO. 5:19-cv-00641-GW (SHKx)

start meeting. Plaintiff claims this required pre-shift work typically took approximately 30 minutes.

18.     On June 12, 2019 Plaintiff served Defendant with a Notice of Deposition of Defendant's Person Most Qualified to provide testimony on relevant topics, Request for Production of Documents and Interrogatories, first set.  By June 26, 2019 the Parties had exchanged their FRCP Rule 26(a) Initial Disclosure Statements.

19.     The Parties agreed to schedule a mediation and, in preparation therefore, exchange informal discovery to avoid the time and expense of formal discovery so they could focus on resolving Plaintiff's claims at mediation. Nonetheless, on November 25, 2019 Defendant served its written responses and objections and again produced its handbooks and relevant written policies, as well as an excel spreadsheet containing Plaintiff's time and punch data and records and other class data.

20.     Pursuant to the Parties' agreement to exchange informal discovery before the mediation, Defendant had previously produced these documents, Class data, and Plaintiff's time and punch data over the time period between August 2019 and early October 2019

21.     To prepare for mediation and to evaluate Class-wide damages, Plaintiff requested and Defendant informally produced data, documents, and information to allow Plaintiff to assess liability and extrapolate damages.

22.     Among the data and documents produced was an excel spreadsheet containing 22,876 lines of payroll data for 1,413 unique employees. The spreadsheet included dates of employment, location of employment, and payroll data detailing hourly rates, hours worked, and total compensation for March 13, 2015 through July 26, 2019.

23.     Americold also produced a second excel spreadsheet containing 892,841 lines of data of punch data for 1,309 unique employees for August 24, 2015

through July 17, 2019. These excel spreadsheets were voluminous and comprehensive requiring Class Counsel to retain a damages' consultant to review and analyze and to assist Class Counsel with the creation of a Class-wide damage model for purposes of engaging in a meaningful and serious mediated session.

24.   On December 18, 2019, the Parties attended a day-long mediation with Jeff Ross, an experienced and well-regarded mediator in Oakland, California facilitating the arms'-length settlement negotiations.

25.   Taking all discussions and negotiations into consideration, by the end of the day, the Parties reached agreement on the principle terms of the proposed Settlement, and diligently continued to negotiate the balance of the terms contained in the Joint Stipulation of Class Action Settlement and Release.

26.   The Parties agreed the Action may be settled for the Gross Settlement Amount of $2,500,000 ("GSA"), no part of which may revert to Americold under any circumstances. The GSA includes subject to the Court's approval: (a) attorneys' fees of $750,000 to compensate Class Counsel for work performed and remaining to be performed in securing final Court approval and expenses of up to $20,000; (c) a Service Payment to Plaintiff Jose Contreras of up to $10,000 in consideration of his initiation and prosecution of the Action, service as the representative for the Class, work performed, risks undertaken for the payment of costs in the event of an unsuccessful outcome, benefits conferred on absent Class Members, and a general release of all claims; (d) Settlement Administration expenses of up to $20,000, and (e) the PAGA Payment to the Labor Workforce and Development Agency ("LWDA") of $150,000 (75% of the $200,000 PAGA Penalty) pursuant to PAGA.

27.   Plaintiff consented in writing to attorneys' fees of 40% of any recovery, to be divided between Class Counsel as follows: 60% to Cohelan, Khoury & Singer, and 40% to the Law Office of Sahag Majarian II.

28.   After all Court-approved deductions from the GSA, the remaining sum, the "Net Settlement Amount" ("NSA") estimated at $1,550,000 will be

distributed to Participating Class Members without the necessity of returning a claim form.

29.     From the NSA, PAGA Members, a subgroup of the Class that worked one year back from the filing of the Action, will share the $50,000 (25% of the $200,000 PAGA Penalty) on a proportionate basis based on the number of Pay Periods he or she worked during the PAGA Period (February 22, 2018 through 120 days of December 18, 2019, or the date of preliminary approval, whichever is earlier)  in relation to the number of Pay Periods worked by all PAGA Members during the PAGA Period. With an aggregate of 27,744 Pay Periods, a PAGA Member can expect to receive an estimated $1.80 for each Pay Period.

30.     The remaining NSA of $1,500,000 will be distributed to Participating Class Members based on the number of Work Weeks worked during the Class Period (February 22, 2015 through 120 days of December 18, 2019, or the date of preliminary approval, whichever is earlier) in relation to the number of Work Weeks worked by all Participating Class Members during the Class Period. With an estimated 130,086 Work Weeks worked by the Class, it is anticipated Participating Class Members will receive an estimated $11.50, less payroll deductions, for each Work Week worked during the Class Period. If a Class Member worked the entire Class Period, he or she could expect to receive an estimated $3,059 plus a share of PAGA Penalty, if eligible.

31.     Following preliminary approval, ILYM Group, Inc. ("Administrator") will conduct a search of the National Change of Address database to update Class Member addresses, and mail a Notice of Class Action Settlement ("Class Notice"), Change of Address form, and pre-printed return envelope (collectively, "Notice Packet") to each member of the Class identified by Defendant's employment records.

32.     The Class Notice informs Class Members of their right to (1) participate in the proposed Settlement without the need to return a claim form, (2)

request exclusion from the Settlement, (3) object to the Settlement, and (4) how to dispute the number of Work Weeks and Pay Periods shown in the Class Notice, last page. The Class Notice includes instructions and timing for each of these acts, as well as the date, time and place set for the Final Approval hearing.  It also describes the releases to be given in exchange for a Settlement Payment, as well as individualized employment information upon which a Settlement Payment will be calculated.

33.     Plaintiff recognized and considered the inherent risks and uncertainty of litigation, including: (i) denial of  certification; (ii) if certified, decertification may be granted; (iii) a grant of summary judgment or summary adjudication; (iv) the need for a unanimous jury; (v) the possibility of an unfavorable, or less favorable, result at trial; (vi) the possibility post-trial motions may result in an unfavorable, or less favorable, result than trial; and, (vii) the possibility of an unfavorable, or less favorable result on appeal, and the certainty that process would be lengthy.

34.     Continued litigation would take substantial time, create risk of no recovery, and possibly confer no Class benefit. By contrast, the proposed Settlement will yield a prompt, certain, and substantial Class recovery, without additional time or judicial resources.

35.     In the face of these uncertainties, the Parties agreed to a compromise, a non-reversionary Settlement of $2,500,000 which will benefit 1,567 Class Members. The recovery is certain and substantial, with an estimated average of payout of $989 ($1,550,000 / 1,567) to Class Members.

36.     Class Counsel Cohelan, Khoury & Singer and Law Office of Sahag Majarian II have significant wage and hour class action experience and have obtained certification and settlement approval in dozens of cases.

37.     Defendant's counsel, Rebecca Aragon of Littler Mendelson, P.C. is knowledgeable and experienced in wage and hour law and class action litigation.

13

Declaration of Isam C. Khoury ISO Motion for Order Granting
Preliminary Approval of Class Action Settlement                                    CASE NO. 5:19-cv-00641-GW (SHKx)

38.    Class Counsel have prosecuted numerous wage and hour class actions and are experienced and qualified to evaluate the Class claims and the risks and potential outcome of further litigation and the propriety of settlement.

39.    Class Counsel believe the proposed Settlement is in the Class' best interest based on detailed knowledge of the factual and legal issues present. Counsel considered, among other risks, adverse class certification, decertification, or summary judgment rulings, loss or lesser outcome at trial, post-trial, and appeal, and other perils of litigation that affect the value of all claims, in reaching the proposed Settlement.

40.    Plaintiff and Class Counsel's damages' consultant analyzed nearly a million lines of time and pay data records and information for nearly every member of the Class (1,413 of the then identified 1,422) for nearly the entire Class Period.

41.    With the assistance of Class Counsel's damages expert, Class Counsel tabulated and extrapolated violation rates and damages for use at mediation.

42.    Based on this intensive review, Class Counsel determined the following general facts which set the foundation for their damages' calculation: each member of the Class worked approximately 8.9 hours each shift, exclusive of the time Plaintiff contends was rounded and/or unpaid; there were approximately 644,622 shifts were worked by 1,422 employees, extrapolated to December 18, 2019; the average hourly rate was $18.24, and overtime rate was $27.36.

43.    Plaintiff contends Defendant improperly adjusted time clocks to round time to the nearest quarter of an hour. Plaintiff's expert calculated on average a total of 4.1 minutes were unpaid for each of the 644,622 shifts worked.  Overall, 44,128 hours were underpaid and 9,537 hours were overpaid, leaving an underpaid net of 34,591 hours.  In the aggregate, the Class lost more time than gained, and the entirety of the 44,128 hours should have been paid at the applicable minimum wage. Because the average shift exceeded eight hours, these underpaid hours should have been also paid at the overtime rate of pay. Accordingly, Plaintiff calculated the

14

Declaration of Isam C. Khoury ISO Motion for Order Granting
Preliminary Approval of Class Action Settlement                    CASE NO. 5:19-cv-00641-GW (SHKx)

Class, was owed $1,207,342 for unpaid work (44,128 hours x $27.36 (OT rate of pay). This claim was discounted by 25%, to $905,507 ($1,207,342 x 75%) for settlement discussions.

44.     Plaintiff contends Defendant failed to factor into the regular rate of pay all non-discretionary bonuses when calculating overtime wages. Plaintiff calculated the overtime wages owed due to the incorrect regular rate of pay calculations at approximately $268,141. This element of damage would be drastically reduced, if not entirely wiped out, if it were determined that California overtime laws were preempted by the collective bargaining agreements.

45.     Plaintiff observed that for shifts greater than ten hours, more than 99% had no second meal periods recorded.  Analysis of the data showed 146,659 shifts in which an employee worked more than ten hours without recording a second meal period.  The absence of recorded second meal periods could reasonably be used to refute the contention that the written policy was validly applied with respect to second meal periods.

46.     Plaintiff calculated Defendant's maximum exposure to be $1,337,530 ($146,659 shifts x. $18.24 and discounted by 50% for the risk of loss based on Defendant's arguments and affirmative defenses which included more than one-half of the Class was covered by a CBA), and that pursuant to the Labor Code, employees could have waived their second meal period, if a first meal period were taken.  The claim was further discounted by 50% for purposes of negotiations for the potential difficulties in achieving certification to $668,765.

47.     Defendant's written rest period policies provided rest periods for every four hours worked, but failed to account for the "major fraction thereof" requirement.  Plaintiff initially contended employees were not authorized and permitted the correct number of rest periods for shifts lasting 3.5- 4 hours, 6 - 8 hours, and 10 - 12 hours. However, Plaintiff factored in the recently decided case *Cacho v. Eurostar* (2019) 43 Cal. App. 5th 885, 890, which supported Defendant's

15

Declaration of Isam C. Khoury ISO Motion for Order Granting
Preliminary Approval of Class Action Settlement                    CASE NO. 5:19-cv-00641-GW (SHKx)

position that an unlawful written policy is not conclusively presumed to be a failure to provide rest periods.

48.    Like the meal period claim, Plaintiff focused on shifts greater than ten hours in which employees were entitled to third rest periods. Because the absence of second meal periods suggested Defendant did not provide any meal periods notwithstanding the written policy, Plaintiff argued the third rest periods were likely not provided as well.  Assuming a violation rate of 100%, and with 146,659 rest periods on shifts greater than ten hours, the maximum exposure was estimated at $2,675,000 (146,659 shifts x $18.24). As with the meal period claim, this claim was discounted by 50% for the CBA's, and an additional 75% for certification difficulties to $334,383 (146,659 shifts x $18.25 x 50% x 25%).

49.    Labor Code § 226 wage statement violation was calculated based on a derivative theory of liability at $1,279,000, by determining the number of pay periods in the one-year statute of limitations period applicable to penalties (25,580), and multiplying that number by the $50 penalty applicable for each pay period.  As this claim was derivative, it would require prevailing on the underlying claims. However, *Naranjo v. Spectrum,* 40 Cal. App. 5th 444 (2019) recently held that unpaid meal break premiums do not entitle plaintiff to wage statement penalties. Accordingly,  this claim was discounted by 75% to $319,750.

50.    Waiting Time penalties were calculated by assuming each of the 758 former employees were entitled to the maximum penalty of their regular rate of pay, multiplied by a 8.9-hour shift, inclusive of overtime pay, by 30 days.

51.    Since it is unlikely that every former employee suffered unpaid wages and that such claims for unpaid overtime were subject to class certification obstacles and proof of the underlying claims, this claim was valued at $922,880 (758 employees x $18.24 x 8 hours, .9 overtime hours, x 30 days x 75% discount).

52.    In sum, the realistic and reasonable value of the Class' underlying claims, as set forth above, totals an estimated $3,419,426.

Declaration of Isam C. Khoury ISO Motion for Order Granting
Preliminary Approval of Class Action Settlement                    CASE NO. 5:19-cv-00641-GW (SHKx)

53.     Defendant presented formidable defenses and PAGA penalties are subject to judicial discretion. One court reduced the award of civil penalties by 90%. *Carrington v. Starbucks* (2018) 30 Cal. App. 5th 504, 529.  PAGA penalties, 75% of which are awarded to the State of California, can also be highly discounted given a settlement of the underlying wage claims.

54.     Plaintiff sought recovery of penalties for violations of Labor Codes 201, 202, 203, 204, 226, 510, 512, 1174, 1197, and 1198, each of which was subject to a $50 or $100 penalty for each pay period in which a violation occurred.  If Plaintiff could surmount this hurdle, arguments relating to trial manageability would continue to exist.  Of course, Plaintiff must first prevail on the underlying Labor Code violations.  Based on the risks, as well as judicial discretion, Plaintiff assessed a 75% discount to the potential PAGA penalties resulting in a realistic estimated value of $4,811,850.

55.     If the Court were to reduce the $4,811,650 value by 90% as was done in *Carrington,* the maximum penalties would be $481,185.

56.     Class Counsel will file a motion for reimbursement of litigation expenses of up to $20,000 and an award of fees not to exceed $750,000 (30% of GSA). The motion will detail hours expended and litigation expenses advanced.

57.     There are 1,422 Class Members, making joinder impossible.

58.     Class treatment is the superior method for resolving the claims of the Class and achieves judicial economy by avoiding multiple suits, and protects the rights of those who may be unable to present individual claims.

I declare under penalty of perjury under the laws of the United States and the State of California that the foregoing is true and correct and that this Declaration was executed on March 13, 2020, in San Diego, California.



*/s/ Isam C. Khoury*
Isam C. Khoury

**ECF Certification**

Pursuant to Local Civil Rule 5-4.3.4(a)(2)(i), I hereby attest that I've obtained concurrence and authorization regarding the filing of this document from Isam C. Khoury, the signatory to this document.

*/s/* Diana M. Khoury
Diana M. Khoury

Declaration of Isam C. Khoury ISO Motion for Order Granting
Preliminary Approval of Class Action Settlement          CASE NO. 5:19-cv-00641-GW (SHKx)

# EXHIBIT 1

1

**COHELAN KHOURY & SINGER**
2
Michael D. Singer (SBN 115301)
    msinger@ckslaw.com
3
Diana M. Khoury (SBN 128643)
4
    dkhoury@ckslaw.com
Kristina De La Rosa (SBN 279821)
5
    kdelarosa@ckslaw.com
6
605 C Street, Suite 200
San Diego, CA 92101
7
Telephone: (619) 595-3001/Facsimile: (619) 595-3000
8
[*Additional counsel listed on following page*]

9
Attorneys for Plaintiff JOSE CONTRERAS
10
and the Putative Class

11
**LITTLER MENDELSON, P.C.**
12
Rebecca M. Aragon (SBN 134496)
    raragon@littler.com
13
633 West Fifth Street, 63rd Floor
14
Los Angeles, CA 90071
Telephone: (213) 443-4300/Facsimile: (213) 443-4299
15

16
[*Additional counsel listed on following page*]
Attorneys for Defendant AMERICOLD LOGISTICS, LLC
17

18
UNITED STATES DISTRICT COURT

19
CENTRAL DISTRICT OF CALIFORNIA – WESTERN DIVISION

20
JOSE CONTRERAS, on behalf of
himself and other similarly-situated
21
employees,

Case No. 5:19-cv-00641-GW (SHKx)

**JOINT STIPULATION OF CLASS
ACTION SETTLEMENT AND
RELEASE**

22
            Plaintiff,

23
        vs.

24
AMERICOLD LOGISTICS, LLC, a
25
Delaware Limited Liability
Company; and DOES 1 through 10,
26
inclusive,
27
            Defendants.
28

**LAW OFFICES OF SAHAG MAJARIAN II**
Sahag Majarian, II (SBN 146621)
  sahagii@aol.com
18250 Ventura Blvd.
Tarzana, CA 91356
Telephone: (818) 609-0807/Facsimile: (818) 609-0892

Attorneys for Plaintiff JOSE CONTRERAS
and the Putative Class

**LITTLER MENDELSON, P.C.**
Britney N. Torres (SBN 287019)
btorres@littler.com
500 Capitol Mall, Suite 2000
Sacramento, CA 95814
Telephone: (916) 830-7200/Facsimile: (916) 561-0828

Attorneys for Defendant AMERICOLD LOGISTICS, LLC

JOINT STIPULATION OF CLASS ACTION SETTLEMENT AND RELEASE
Exhibit 1 Page 20

## JOINT STIPULATION OF CLASS ACTION SETTLEMENT AND RELEASE

This Joint Stipulation of Class Action Settlement and Release states the proposed terms of the class action settlement of the above-entitled action. The terms stated below are agreed to and binding on Plaintiff Jose Contreras and Defendant Americold Logistics, LLC, ("Defendant" or "Americold"). Once approved by the Court, the Settlement shall be binding under the terms stated herein on Plaintiff, Americold, and the Class Members (as defined below).

### SUMMARY OF THE SETTLEMENT

The Parties herein, as stated in more detail in the terms and definitions below, have agreed to settle on a class basis all claims asserted by Plaintiff for various alleged violations of the California Labor Code and the Unfair Competition Law. The class consists of all individuals employed by Americold in the State of California as non-exempt employees during the class period defined below. The Parties conducted mediation of this case on December 18, 2019 with Jeffrey Ross, after which the Parties entered into a Memorandum of Understanding stating that all claims alleged herein, as defined below, would be settled on a class basis for the maximum amount of Two Million Five Hundred Thousand Dollars ($2,500,000.00), with no portion of the settlement reverting back to Defendant. Of that settlement amount, Two Hundred Thousand Dollars ($200,000) would be designated as PAGA Penalties under the Private Attorneys General Act, seventy-five percent (75%) of which will be paid to the state of California and twenty-five percent (25%) of which will be paid to members of the class in accordance with the terms herein below.

### DEFINITIONS

1. The following definitions are applicable to this Settlement, in addition to other terms defined elsewhere in the Settlement:

    a. "Actions" shall mean the claims asserted in *Contreras I* and

2.                                          Case No. 5:19-cv-00641-GW (SHKx)

*Contreras II*, and all complaints on file in those cases and the Complaints filed in the above-captioned United States District Court, Central District of California, Case No. 5:19-cv-00641-GW (SHKx).

b.      "Attorneys' Costs" means reasonable attorneys' costs approved by the Court for Class Counsel's litigation and resolution of the Actions incurred and to be incurred by Class Counsel in the Actions up to, but not to exceed, Twenty Thousand Dollars ($20,000.00). Attorneys' Costs shall be paid to Class Counsel.  The Attorneys' Costs shall be paid from the Gross Settlement Amount.

c.      "Attorneys' Fee Award" means the attorneys' fees agreed upon by the Parties and approved by the Court for Class Counsel's litigation and resolution of the Actions up to, but not to exceed, thirty percent (30%) of the Gross Settlement Amount.  Attorneys' Fees shall be paid to Class Counsel from the Gross Settlement Amount.

d.      "Class" and "Class Members" for purposes of this Settlement shall be defined as: "All individuals employed by Americold in the State of California as hourly non-exempt employees at any time during the Class Period. The persons identified in this paragraph are "Class Members" and are collectively referred to as "the Class."

e.      "Class Counsel" shall mean Isam C. Khoury, Michael D. Singer, Diana M. Khoury and Kristina De La Rosa of the Cohelan Khoury & Singer and Sahag Majarian, II of Law Offices of Sahag Majarian II representing the Plaintiff in the Actions.

f.      *"Contreras I"* means the lawsuit filed by Plaintiff in the Superior Court of the State of California for the County of San Bernardino, *Jose Contreras, on behalf of himself and other similarly-situated employees, Plaintiff v. Americold Logistics, LLC, Defendant*, originally filed as Case No. CIVDS1905720.

g.      *"Contreras II"* means the lawsuit filed by Plaintiff in the Superior

Court of the State of California for the County of San Bernardino, *Jose Contreras v. Americold Logistics, LLC*, originally filed as Case No. CIVDS1913523 under the Private Attorneys General Act ("PAGA").

h.     "Class Period" shall mean the time period from February 22, 2015 through 120 days after the date of mediation (December 18, 2019) or the date of preliminary approval of the class settlement, whichever date is earlier ("Class Period").

i.     "Class Representative Service Award" shall mean an award up to, but not to exceed, Ten Thousand Dollars ($10,000.00) to Plaintiff in recognition of Plaintiff's effort and work in prosecuting the Actions on behalf of Class Members, risks undertaken for the payment of costs in the event of loss, and the giving of general release of all claims.  The Class Representative Service Award shall be paid from the Gross Settlement Amount.

j.     "The Court" shall mean the United States District Court, Central District of California, The Honorable George H. Wu presiding, Case No. 5:19-cv-00641-GW (SHKx).

k.     "Defendant" or "Americold" shall mean Defendant Americold Logistics, LLC.

l.     "Effective Date" shall be thirty-three (33) calendar days from the entry of the Order Granting Final Approval, as attached in **Exhibit D** and described below. However, if an appeal is filed within thirty (30) days of the Order Granting Final Approval, then the Effective Date shall be the latest of: (i) the date of final affirmance of the Order Granting Final Approval; (ii) the expiration of the time for a petition for writ of certiorari to review Order Granting Final Approval if affirmed and, if the certiorari is granted, the date of final affirmance of the Order Granting Final Approval following review pursuant to that grant; or (iii) the date of final dismissal of any appeal from the Order Granting Final Approval or the final dismissal of any proceeding on certiorari to review the Order Granting Final Approval that has the effect of confirming

the Order Granting Final Approval.

m. "Employer Taxes" means Americold's share of employer-sided payroll taxes to be paid on that portion of the Class Member's Individual Settlement Payment (as defined below in Paragraph 35) characterized as wages, i.e. FICA, FUTA, payroll taxes, and/or any similar tax or charge. The Employer Taxes will be paid outside of and in addition to the Gross Settlement Amount.

n. "Gross Settlement Amount" (or "GSA") shall mean the maximum non-reversionary amount of Two Million Five Hundred Thousand Dollars ($2,500,000.00) payable by Americold as provided for by this Agreement.

o. "Individual Settlement Payment" means the amount each Class Member shall be entitled to receive pursuant to the Settlement as long as they do not request to be excluded from the Settlement. This payment will include compensation pursuant to the terms of this Agreement for all Work Weeks worked during the Class Period and the number of Pay Periods worked during the PAGA Period.

p. "LWDA Payment" means the seventy-five percent (75%) portion of the PAGA Penalties to be paid to the California Labor and Workforce Development Agency pursuant to the PAGA.

q. "Net Settlement Amount" shall mean the Gross Settlement Amount less (a) the Class Representative Service Award, (b) Settlement Administration Costs, (c) Attorneys' Fees Award, (d) Attorneys' Costs, and the (e) LWDA Payment.

r. "Notice Packet" shall mean the Notice of Proposed Class Action Settlement substantially in the form attached as **Exhibit A,** mailed together with the Change of Address Form attached as **Exhibit B**, and pre-printed return envelope by the Administrator;

s. "Parties" shall mean collectively, Plaintiff and Defendant.

t. "Plaintiff" and "Class Representative" shall mean Plaintiff Jose Contreras.

1    u.    "PAGA" shall mean the Private Attorneys General Act of 2004,
2 California Labor Code section 2698, *et seq.*

3    v.    "PAGA Member(s)" means those Class Members who worked any
4 time during the PAGA Period.

5    w.    "PAGA Penalties" means civil penalties under the PAGA agreed
6 upon by the Parties and approved by the Court up to, but not to exceed, Two Hundred
7 Thousand Dollars ($200,000), seventy-five percent (75%) of which will be paid to the
8 California Labor and Workforce Development Agency ("LWDA Payment"), and the
9 remaining twenty-five percent (25%) shall be part of the Net Settlement Amount to be
10 distributed proportionately to PAGA Members who do not return a request to be
11 excluded from the Action.

12    x.    "PAGA Period" means that period of time from February 22, 2018
13 to the earlier of the date of preliminiary approval or One Hundred Twenty (120) days
14 from the date of mediation (December 18, 2019) in which PAGA Members worked.
15 PAGA Members were issued wage statements/pay checks every 14 days during the
16 PAGA Period.

17    y.    "Participating Class Member(s)" means any Class Member who
18 does not return a valid and timely request to be excluded from the Settlement.  All
19 Participating Class Members will be mailed their Individual Settlement Payment
20 without the need to return a claim form.

21    z.    "Response Deadline" means the deadline by which Class Members
22 must postmark and return to the Administrator signed, dated, and timely requests for
23 exclusion from the Settlement, objections to the Settlement and/or disputes concerning
24 the number of Weeks Worked during the Class Period and/or number Pay Periods
25 worked during the PAGA Period.  The Response Deadline will be forty-five (45)
26 calendar days from the initial mailing of the Notice Packets by the Settlement
27 Administrator, unless the 45th day falls on a Sunday or Federal holiday, in which case

28

the Response Deadline will be extended to the next day on which the U.S. Postal Service is open. The Response Deadline will be extended fifteen (15) calendar days for any Class Member who is re-mailed a Notice Packet by the Settlement Administrator, unless the 15th day falls on a Sunday or Federal holiday, in which case the Response Deadline will be extended to the next day on which the U.S. Postal Service is open.  The Response Deadline may also be extended by express agreement between Class Counsel and Defendant.

aa.    "Released Claims" means any and all claims, debts, rights, demands, obligations or liabilities of every nature and description, whether known or unknown, for damages, premiums, penalties, liquidated damages, punitive damages, interest, attorneys' fees, litigation costs, restitution, or equitable relief alleged, in whole or in part, in the Actions (based on the facts alleged in the complaint in either *Contreras I* and/or *Contreras II*, or the letter to the Labor and Workforce Development Agency) arising during the Class Period on behalf of Class Members, including without limitation: (i) failure to pay compensation for all hours worked, (ii) failure to separately pay for all non-productive time, (iii) failure to provide, advise, and inform employees of their right to take meal periods, (iv) failure to authorize, permit, advise, and inform employees of their right to take rest periods, (v) failure to pay for rest periods, (vi) failure to pay minimum wages and vacation wages, (vii) failure to issue accurate itemized wage statements, (viii) waiting time penalties, (ix) violations of and civil penalties set forth in California Labor Code §§ 200, 201, 202, 203, 204, 210, 218.5, 221, 222, 223, 225.5,  226, 226.3, 226.7, 510, 512, 558, 1174, 1174.5, 1194, 1197, 1197.1,  and 1198; (x) violations of the PAGA (xi) violations of California Business & Professions Code § 17200 *et seq.*; (xii) violations of California Code of Regulations, Title 8, section 11090 *et seq.*; (xiii) violations of IWC Wage Orders, including without limitation IWC Wage Orders 9-1998, 9-2000 and 9-2001; (xiv) as it relates to the underlying Labor Code claims referenced above, interest, attorneys' fees and costs, for

JOINT STIPULATION OF CLASS ACTION SETTLEMENT AND RELEASE
Exhibit 1 Page 26

the duration of the Class Period.  The release of the foregoing claims and definition of Released Claims extends to all theories of relief regardless of whether the claim is, was or could have been alleged as separate claims, causes of action, lawsuits or based on other theories of relief, whether under federal law, California law or any state law or common law (including, without limitation, as violations of the California Labor Code, the Wage Orders, applicable regulations, California's Business and Professions Code section 17200), any and all claims under the Fair Labor Standards Act and any benefits under any benefit plan, program or policy sponsored or maintained by the Company, including, but not limited to the Employee Retirement Income Security Act, 29 U.S.C. §1001, *et seq*., but not vested benefits under any pension or 401(k) plan or other ERISA-governed benefit plan.  "Released Claims" includes all types of relief available for the above-referenced claims, including any claims for damages, restitution, losses, premiums, penalties, fines, liens, attorneys' fees, costs, expenses, debts, interest, injunctive relief, declaratory relief, or liquidated damages.

bb.    "Released Parties" means Americold, its past, present, and future parents, subsidiaries, divisions, and affiliates and their respective past, present, and future officers, directors, employees, partners, shareholders, owners, agents, vendors, affiliates, insurers, legal representatives, attorneys and all of their successors (including persons or entities who may acquire them in the future), assigns, representatives, heirs, executors, and administrators and all other persons acting by, through, under or in concert with them that could be liable.

cc.    "Settlement" or "Agreement" or "Settlement Agreement" shall mean this Joint Stipulation of Class Action Settlement and Release.

dd.    "Settlement Administrator" means ILYM Group, Inc., or any other third-party class action settlement administrator agreed to by the Parties and approved by the Court for the purposes of administering this Settlement.

ee.    "Settlement Administration Costs" means the costs allocated from

the Gross Settlement Amount to pay for administration of the settlement, as described in this Agreement, including required tax calculations and tax reporting to the appropriate governmental entities in connection with the Individual Settlement Payments (as defined below), issuing of 1099 and W-2 IRS Forms,  address updates through the National Change of Address database (prior to the mailing of the Notice Packets, distributing Notice Packets, skip-tracing Notice Packets returned as undeliverable, calculating and distributing the Individual Settlement Payments, weekly status reports, resolving disputed claims with the aid of the Parties' counsel, and providing all reports and declarations deemed necessary by the Parties in an amount not to exceed $20,000.

ff.     "Work Week" or "Week Worked" means any week in which a Class Member or PAGA Member worked one day in that week during the Class Period or PAGA Period, respectively, excepting those dates/times taken for vacations and leaves of absences.

## TERMS OF THE CLASS SETTLEMENT

1.     <u>Gross Settlement Amount</u>.   Americold shall pay the Gross Settlement Amount to resolve the Actions on a class-wide basis.   In addition to the Gross Settlement Amount, Americold shall pay the Employer Taxes due on the portion of the Individual Settlement Payments allocated to wages. Under no circumstances shall Americold be obligated to pay any more than the Gross Settlement Amount and the Employer Taxes.

2.     <u>Allocation of the Gross Settlement Amount</u>.  From the Gross Settlement Amount, and subject to the approval of the Court, the Parties agree to the following allocations:

a.     <u>Class Representative Service Award</u>.  Plaintiff shall be paid a Class Representative Service Award of up to $10,000 in recognition of Plaintiff's effort and

1  work in prosecuting the Actions on behalf of Class Members, and undertaking the
2  burdens and risks for the payment of costs in the event of loss.  The Class Representative
3  Service Award shall be paid in addition to Plaintiff's Individual Settlement Payment
4  for which Plaintiff must give a general release of all claims against Americold.  Plaintiff
5  shall be solely and legally responsible to pay any and all applicable taxes on his Class
6  Representative Service Award.  Any portion of the Class Representative Service Award
7  not awarded to Plaintiff shall remain with the Net Settlement Amount.

8  　　　　　b.　　Settlement Administration Costs.  The Settlement Administrator
9  shall be paid "Settlement Administration Costs" in an amount not to exceed $20,000;

10  　　　　　c.　　Attorneys' Fee Award.  Class Counsel shall be paid an Attorneys'
11  Fee Award of up to $750,000, thirty (30) percent of the Gross Settlement Amount;

12  　　　　　d.　　Attorneys' Costs.  Class Counsel shall be paid an award for
13  reimbursement of their Attorneys' Costs in an amount of up to $20,000;

14  　　　　　e.　　PAGA Penalties.  PAGA Penalties of $150,000 (75% of $200,000)
15  shall be paid to the LWDA and $50,000 (25% of $200,000) to those Participating Class
16  Members who have worked during pay periods in the PAGA Period.

17  　　　2.　　Allocation of the Net Settlement Amount.  The Net Settlement Amount
18  estimated at $1,500,000 shall be allocated to Participating Class Members based on the
19  formula described below. Any portion of the Class Representative Service Award, the
20  Settlement Administration Costs, the Attorneys' Fees Award, the Attorneys' Cost,
21  and/or the LWDA Payment not approved by the Court shall be included in the Net
22  Settlement Amount.  No portion of the Net Settlement Amount shall revert to or be
23  retained by Americold under any circumstance. The entire Net Settlement Amount shall
24  be distributed to Participating Class Members on a proportionate basis as follows:

25  　　　　　a.　　Work Week Rate.  For each member of the Class, Americold shall
26  determine the number of Work Weeks during the Class Period based on its business and
27  payroll records.  For calculation purposes, a partial workweek shall be considered the

28

same as a full workweek.   The Administrator shall tabulate the aggregate number of Work Weeks worked by all Class Members and divide the Net Settlement Amount, less the 25% of the PAGA Penalties, by that aggregate number to arrive at the Work Week Rate.

b.   <u>Pay Period Rate</u>.   Americold shall determine for each PAGA Member, the number of Pay Periods, if any, worked during the PAGA Period based on its business and payroll records.  The Administrator shall tabulate the aggregate number of Pay Periods and divide the remaining 25% of the PAGA Penalties, i.e., $50,000 by the aggregate number of Pay Periods to arrive at the Pay Period Rate.

c.   <u>Individual Settlement Payments</u>.  Participating Class Members shall receive an Individual Settlement Payment representing payment for all Work Weeks worked during the Class Period, and for all Pay Periods, if any, worked during the PAGA Period, at the rates calculated in the preceding paragraphs.  In the event that a Class Member or PAGA Member should dispute the information upon which his or her Individual Settlement Payment is calculated, and it is determined by the Administrator from the information and/or documentation provided by that Class or PAGA Member, that an amount more than that initially calculated is payable to any Participating Class Member pursuant to the Settlement, that additional amount will be paid from the Gross Settlement Amount.  In no event shall Americold ever be required to pay any amount greater than the Gross Settlement Amount and the Employer Taxes.

3.   <u>No Credit Toward Benefit Plans</u>.   Unless otherwise required by any applicable benefit plan, the Individual Settlement Payments made to Settlement Class Members, as well as any other payments made pursuant to this Settlement, shall not be construed as compensation for nor utilized to calculate any additional benefits under any benefit plans to which any Class Members may otherwise be eligible, including, but not limited to profit-sharing plans, bonus plans, 401(k) plans, stock purchase plans, vacation plans, sick leave plans, PTO plans, and any other benefit plan. Unless

otherwise required by any applicable benefit plan, this Settlement shall not affect any rights, contributions, or amounts to which any Class Members may be entitled under any benefit plans.

## SUMMARY OF THE LITIGATION AND SETTLEMENT

4.     On February 22, 2019, Plaintiff Jose Contreras filed *Contreras I* on behalf of himself and a putative class. Plaintiff alleged causes of action against Americold for: (1) Failure to Pay Minimum Wages; (2) Failure to Pay Overtime Wages; (3) Failure to Pay All Vacation Wages; (4) Failure to Provide Meal Periods; (5) Failure to Provide Accurate Itemized Wage Statements; (6) Failure to Pay Wages Timely to Terminated Employees; and (7) Unfair Competition Law Claim.  Plaintiff sought to represent all individuals employed by Americold in the State of California as non-exempt employees at any time from February 22, 2015 through trial of *Contreras I*.

5.     On April 9, 2019, Americold answered the complaint in *Contreras I*.  On April 10, 2019, Americold removed *Contreras I* from state court to federal court.

6.     On May 2, 2019, Plaintiff Jose Contreras filed a second lawsuit against Americold, *Contreras II*. Plaintiff filed this lawsuit on behalf of current and former non-exempt employees of Americold, Plaintiff alleged causes of action under the PAGA for: (1) Failure to Pay Minimum, Regular, and Overtime Wages; (2) Failure to Provide Meal Periods; (3) Failure to Pay Accrued Vacation Wages and Unlawful Deductions; (4) Failure to Provide Proper Wage Statements; (5) Failure to Timely Pay Wages Earned Each Pay Period Upon Cessation of Employment; and (6) Failure to Provide Written Notice Required by Labor Code section 2810.5.

7.     On June 17, 2019, pursuant to a joint stipulation, the above-captioned District Court granted Plaintiff permission to file a First Amended Complaint in *Contreras I*, effectively incorporating *Contreras II* into *Contreras I*.  Plaintiff filed a First Amended Complaint including the following causes of action: (1) Failure to Pay

Minimum and Wages; (2) Failure to Pay Overtime Wages; (3) Failure to Provide Meal Periods; (4) Failure to Provide Rest Periods; (5) Failure to Provide Accurate Itemized Wage Statements; (6) Failure to Pay Wages Timely to Terminated Employees; (7) Unfair Competition Law Claim; (8) Civil Penalties Under the PAGA for Failure to Pay Minimum and/or Overtime Wages; (9) Civil Penalties Under the PAGA for Unlawful Deductions; (10) Civil Penalties Under the PAGA for Failure to Provide Meal Periods; (11) Civil Penalties Under the PAGA for Failure to Provide Proper Wage Statements; (12) Civil Penalties Under the PAGA for Failure to Timely Pay Wages Earned Each Pay Period Upon Termination of Employment; and (13) Civil Penalties Under the PAGA for Failure to Provide Written Notice Required by Labor Code section 2810.5.

8.     *Contreras II* was dismissed pursuant to Plaintiff's request on June 25, 2019.

9.     Class Counsel conducted informal discovery in the present case, and have diligently pursued an investigation and litigation of the claims of Plaintiff and the putative Class Members.  The Parties recognize the issues in the Actions will likely only be resolved with further extensive and costly proceedings; recognize that further litigation shall cause inconvenience, distraction, disruption, delay and expense disproportionate to the potential benefits of litigation; and recognize the risk and uncertainty of the outcome inherent in any litigation.  Based on their own independent investigation and evaluation, Class Counsel is of the opinion that the Settlement with Americold for the consideration and on the terms of this Settlement is fair, reasonable, and adequate and is in the best interest of the Class in light of all known facts and circumstances, including the risk of significant delay and defenses asserted by Americold.  While Americold specifically denies all liability in the Actions, it has agreed to enter into this Settlement to avoid the cost and business disruption associated with further defense of the Actions.

10.    The Parties participated in a mediation of this case on December 18, 2019

with Jeffrey Ross, at which time the Parties settled the Actions.  The Parties have agreed to fully, finally, and forever compromise and settle all claims asserted in the Actions. To achieve a complete release of Americold, each Class Member will be informed that in exchange for their Individual Settlement Payment, the Participating Class Member will release the Released Claims as against the Released Parties.

## PRELIMINARY APPROVAL OF THE SETTLEMENT

11.   Preliminary Approval:  Upon execution of this Settlement, Plaintiff shall file a Motion for Order Granting Preliminary Approval of the Class Action Settlement which requests the following: (i) preliminary approval of the Settlement, subject only to the objections of Settlement Class Members and final review by the Court; (ii) conditional certification of a class for purposes of settlement only; (iii) a schedule for final approval hearing regarding the proposed Settlement, including payment of Attorneys' Fees and Attorneys' Costs, and Class Representative Service Award; (iv) approval as to form and content of the proposed Notice Packet; (v) a schedule for the procedures for the Response Deadline; and (vi) a schedule for the mailing of the Notice Packet by first class mail to the Class Members, as substantially reflected in the proposed Order Granting Preliminary Approval, attached as **Exhibit "C".**   Plaintiff's Counsel will provide counsel for Defendant with a draft of the motion for preliminary approval at least seven (7) business days before it is filed with the Court for Defendant's review and input.  Defendant shall not oppose the Preliminary Approval Motion and may, in its sole option, file a declaration of non-opposition. Concurrently with the filing of the Preliminary Approval Motion, counsel for Plaintiff shall submit a copy of this Agreement to the LWDA, and provide proof of said submission to the Court and counsel for Defendant.

12.   Within ten (10) days of filing the Preliminary Approval Motion, Defendant shall, in compliance with the Class Action Fairness Act, 28 U.S.C. § 1715,

serve written notice of the proposed Settlement on the U.S. Attorney General and the appropriate California state official, along with the appropriate state official in every state where a Class Member resides.

13.     Class Action Certification for Settlement Purposes Only.  The Parties agree to stipulate to certification of the Class for purposes of the Settlement only.  If, for any reason, the Settlement is not approved, the stipulation to certification shall be void.  The Parties further agree that certification for purposes of the Settlement is not an admission that class action certification is proper under the standards applied to contested certification motions and that this Settlement shall not be admissible in this or any other proceeding as evidence that either: (i) a class action should be certified or (ii) Americold is liable to Plaintiff or any Class Member, other than according to the Settlement's terms.

## SETTLEMENT ADMINISTRATION

14.     Settlement Administrator.  The Parties each represent that they do not have any financial interest in the Settlement Administrator or otherwise have a relationship with the Settlement Administrator that could create a conflict of interest.

15.     Class Data.  Within 14 days of the Order Granting Preliminary Approval, Americold shall provide to the Settlement Administrator for each identifiable member of the Class the following information: name, address, social security number, telephone numbers, dates of employment, and the number of Work Weeks worked during the Class Period and the number of Pay Periods worked during the PAGA Period ("Class Data List").  The Class Data List and information shall remain confidential.  The Settlement Administrator shall only use this information to facilitate notice, administration of the Settlement, and for distribution of Individual Settlement Payments to Participating Class Members.  The Parties agree to cooperate in the administration of the Settlement and to make all reasonable efforts to control and minimize the costs and

1   expenses incurred in administration of the Settlement.

2       16.    <u>Duty to Protect Class Data</u>.  The Settlement Administrator shall represent

3   and warrant that it shall:  (i) provide reasonable and appropriate administrative, physical

4   and technical safeguards for the Class Data list that it receives from Americold; (ii) not

5   disclose the Class Data list to Class Counsel, Named Plaintiff, any party or third parties,

6   including agents or subcontractors, without Americold's consent and keep the Class

7   Data list confidential; (iii) not disclose or otherwise use the Class Data other than to

8   carry out its duties as set forth herein; and (iv) promptly provide Americold with notice

9   if it becomes aware that the Class Data list becomes subject to unauthorized access, use,

10  or disclosure.

11      17.    <u>Confirmation of Contact Information in the Class Lists</u>.  Following receipt

12  of the Class Data list from Americold, and prior to mailing, the Settlement

13  Administrator shall perform a search of the National Change of Address Database to

14  update and correct stale Class Member addresses.   If any Notice Packet is returned to

15  the Settlement Administrator as non-deliverable on or before the Response Deadline,

16  within three days of its receipt, the Settlement Administrator shall send it promptly via

17  regular First-Class U.S. Mail to the forwarding address affixed thereto and the

18  Settlement Administrator shall indicate the date of such re-mailing on the Notice Packet.

19  If no forwarding address is provided, the Settlement Administrator shall promptly

20  attempt to determine the correct address by using a skip-trace, or other search using the

21  name, address and/or social security number of the Class Member involved, and shall,

22  within three days of learning the correct address, re-mail the Notice Packet.  Should a

23  Notice Packet associated with a currently employed Class Member be returned to the

24  Administrator, it shall immediately inform Americold to obtain a more current mailing

25  address for that Class Member to re-mail the Notice Packet.

26      18.    <u>Notice by First-Class U.S. Mail</u>.  Within fourteen (14) business days

27  following Americold's provision of the Class Data List to the Settlement Administrator

28

as set forth in Paragraph 17, supra, the Administrator shall mail the individualized Notice Packet by First Class U.S. Mail.  Each individualized Notice of Class Action Settlement ("Notice" – Exhibit "A") shall include the Class Member's dates of employment and the number of Weeks Worked during the Class Period, and the number of Pay Periods worked during the PAGA Period, and the estimated Individual Settlement Payment amount.  The Notice will also inform the Class that if they do not return a valid and timely Request for Exclusion from the Settlement, each will be mailed their Individual Settlement Payment to the address on file with the Administrator.  The Notice also informs the Class of the manner and deadline to submit (1) requests for exclusion from the Settlement, (2) objections to the Settlement; and (3) disputes concerning the number of Weeks Worked during the Class Period or the number of Pay Periods worked during the PAGA Period.  The Notice further informs the Class of the claims to be released if they do not request to be excluded, and the date, time, and place set for the Final Approval Hearing.

19.    <u>Disputed Workweek and/or Pay Period Information.</u>   Class Members shall have an opportunity to dispute the information upon which their Individual Settlement Payment will be calculated, which will be included in their Notice Packets.  To the extent Class Members dispute their employment dates, the number of Weeks Worked during the Class Period or the number of Pay Periods Class Members may produce evidence to the Settlement Administrator showing that such information is inaccurate. The deadline to submit such a dispute is the Response Deadline.  The dispute must: (i) set forth the name, address, telephone number and last four digits of the social security number of the Class Member submitting the dispute; (ii) be signed by the Class Member; (iii) be timely returned to the Settlement Administrator; (iv) clearly state the reason(s) that the Class Member disputes the information provided ontained in the Notice Packet; and (v) be postmarked on or before the Response Deadline.  The Settlement Administrator shall decide the dispute.  Americold's records shall be

JOINT STIPULATION OF CLASS ACTION SETTLEMENT AND RELEASE

Exhibit 1 Page 36

presumed correct, but the Settlement Administrator shall evaluate the evidence submitted by the Class Member and shall make the final decision as to the merits of the dispute.  All disputes shall be decided within ten (10) business days of the Response Deadline.

20.  Request for Exclusion Procedures.  Any Class Member wishing to opt-out from the Settlement must sign and postmark a written Request for Exclusion to the Settlement Administrator, in the manner set forth in the Notice, by the Response Deadline.  The Request for Exclusion must: (i) set forth the name, address, telephone number and last four digits of the social security number of the Class Member requesting the exclusion; (ii) be signed by the Class Member; (iii) be timely returned to the Settlement Administrator; (iv) clearly state that the Class Member does not wish to be included in the Settlement and does not wish to receive any payment or other benefits therefrom; and (v) be postmarked on or before the Response Deadline.  The postmark date shall be the exclusive means to determine whether a Request for Exclusion has been timely submitted.  No Request for Exclusion may be made on behalf of a group of Class Members.  Pay Periods and Weeks Worked by Class Members who have submitted a valid and timely Request for Exclusion shall be deducted from the aggregate number of Weeks Worked and Pay Periods.

21.  Defective Submissions.  If a Class Member's Request for Exclusion is defective as to any of the requirements listed herein, that Class Member shall be given an opportunity to cure the defect(s).  The Settlement Administrator shall mail the Class Member a cure letter within three (3) business days of receiving the defective submission to advise the Class Member that his or her submission is defective and that the defect must be cured to render the Request for Exclusion valid.  The Class Member shall have until (i) the Response Deadline or (ii) ten (10) calendar days from the date of the cure letter, whichever date is later, to postmark a revised Request for Exclusion.  If the revised Request for Exclusion is not postmarked within that period, it shall be

deemed untimely.  Class Members shall be limited to one cure letter advising them of the defect.  A Class Member who submits an invalid or untimely request to be excluded will remain a Class Member, will receive their Settlement Share, and be bound by the releases and judgment entered.  The invalid and untimely request for exclusion shall be deemed null and void.

22.  <u>Objection Procedures</u>.  To object to the Settlement, a Class Member must postmark a valid Notice of Objection to the Settlement Administrator on or before the Response Deadline.  The Notice of Objection must be signed by the Class Member and contain all information required by this Settlement and as set forth in the Notice of Class Action Settlement.  For the Notice of Objection to be valid, it must include:  (i) the objector's full name, signature, address, and telephone number; (ii) a written statement of all grounds for the objection accompanied by any legal support for such objection; (iii) copies of any papers, briefs, or other documents upon which the objection is based; and (iv) a statement whether the objector intends to appear at the Final Approval Hearing.  The postmark date shall be deemed the exclusive means for determining that the Notice of Objection is timely.  Any Class Member who does not submit a timely written objection to the Settlement, or who fails to otherwise comply with the specific and technical requirements of this Paragraph as provided in the Notice, shall be foreclosed from objecting to the Settlement and seeking any adjudication or review of the Settlement, by appeal or otherwise.  Class Members who postmark timely Notices of Objection shall have a right to appear at the Final Approval Hearing in order to have their objections heard by the Court.  At no time shall any of the Parties or their counsel seek to solicit or otherwise encourage Class Members to submit written objections to the Settlement or appeal from the Final Approval and Judgment.  Class Counsel shall not represent any Class Members with respect to any such objections to this Settlement. The Parties shall file all Notices of Objection, valid or invalid, timely or untimely, with the Court in advance of the Final Approval/Settlement Fairness Hearing. If the Court

overrules the Class Member's objection, or if the Court approves the Settlement despite any objections, the Class Member will be deemed to be a Participating Class Member and will be bound by the terms of this Agreement, and will be mailed their Individual Settlement Payment.

23.   Settlement Administrator Reports Regarding Class Member Participation. The Settlement Administrator shall provide Defendant's counsel and Class Counsel a weekly report that certifies the number of Class Members who have submitted valid Requests for Exclusion, objections to the Settlement, and whether any Class Member has submitted a challenge to any information contained in their Notices.  The Settlement Administrator shall provide to counsel for both Parties any updated reports regarding the administration of the Settlement as needed or requested.  Not later than fourteen (14) days after the final Response Deadline, the Settlement Administrator will provide the Parties with a complete and accurate list of all Participating Class Members, all Non-Participating Class Members, and all Class Members who objected to the Settlement Agreement.

24.   Settlement Administrator Declaration. Not later than twenty-eight  (28) court days prior to the Final Approval Hearing, the Settlement Administrator will provide the Parties with  its declaration of due diligence setting forth its compliance with its obligations under this Agreement to be filed with the Court, and will supplement its declaration as needed or as requested by the Court.

25.   Settlement Administrator Final Report. By no later than five (5) calendar days following the Effective Date, the Settlement Administrator shall provide counsel for both Parties with the aggregate number of Weeks Worked by Participating Class Members during the Class Period, and aggregate number of Pay Periods worked by PAGA Members during the PAGA Period. Upon completion of administration of the Settlement, the Settlement Administrator shall provide a written declaration under oath to certify such completion to the Court and counsel for all Parties.

26.   <u>Americold's Right to Rescind</u>.  Americold shall have, in its sole discretion, the right to void and withdraw from the Settlement if, at any time prior to Final Approval, ten percent (10%) or more of Class Members timely and validly Request Exclusion from the settlement.  Americold must exercise this right of rescission in writing to Class Counsel within thirty (30) calendar days after the latest date any Class Member may timely submit his or her Request for Exclusion.

27.   <u>Escalator Clause</u>.  The Gross Settlement Amount was negotiated based on approximately 1,422 Class Members, and 95,000 pay periods during the period from August 24, 2015 through July 12, 2019, and 135,000 pay periods during the period from August 24, 2015 through December 18, 2019.  If it is determined following receipt of the Class Data List by the Administrator and prior to the mailing of the Notice Packet that the number of pay periods is five (5) percent greater than these figures, the Gross Settlement Amount shall increase on a proportional basis (e.g., if there is a six (6) percent increase in the number of pay periods, the Gross Settlement Amount will increase by six (6) percent.

## FINAL APPROVAL

28.   <u>Final Settlement Approval Hearing and Entry of Judgment</u>.  Upon expiration of the Response Deadline as ordered by the Court at the time of the Preliminary Approval Hearing, a Final Approval Hearing shall be conducted to determine the Final Approval of the Settlement along with the amounts properly payable for:  (i) Individual Settlement Payments; (ii) the Class Representative Service Award;   (iii) Attorneys'   Fee   Award;   (iv) Attorneys'   Costs;   (v) Settlement Administration Costs; and (vi) PAGA Penalties.  The Final Approval Hearing shall not be held earlier than sixty (60) calendar days after the Response Deadline.  Class Counsel shall be responsible for drafting all documents necessary to obtain final approval.  The Motion for Order Granting Final Approval and Entering Judgment shall include Class

Counsel's application for the Class Counsel's Attorneys' Fees and Costs, the Class Representative Service Payment, and the Administrator's expenses.  A draft of such motion shall be provided to Counsel for Defendant seven business days prior to its filing with the Court.  Plaintiff agrees not to file his motion and/or application without Defendant's review and input.  The Settlement Administrator shall maintain on its website a section for this Settlement which includes a copy of the Motion for Preliminary Approval, along with any accompanying exhibits, and operative complaint. It shall be updated after Judgment is entered with a copy of the final Judgment.

29.   _Attorneys' Fee Award and Costs_.   Americold shall not object to Class Counsel's request of reasonable Attorneys' Fees of up to $750,000 (30% of the Gross Settlement Amount) and their reasonable Attorneys' Costs estimated at $20,000.   Class Counsel's application for Attorneys' Fees and Costs award shall be included within the Motion for Order Granting Final Approval of Class Action Settlement, unless the Court instructs otherwise.

30.   _Judgment and Continued Jurisdiction_.   Concurrent with the Motion for Order Granting Final Approval of the Class Action Settlement, the Parties shall present the Order Granting Final Approval and Entering Judgment to the Court, in a form substantially similar to **Exhibit "D"**, for approval.   After entry of the Judgment, the Court shall have continuing jurisdiction over the Settlement as required by law, including: (i) the interpretation and enforcement of the terms of the Settlement; (ii) settlement administration matters; and (iii) such post-Judgment matters as may be appropriate under court rules or as set forth in this Settlement.

31.   _Funding of the Settlement_.  Americold shall transmit the Gross Settlement Amount to the Administrator together with the amount representing the Employer Taxes (to be communicated by the Administrator to Americold at least (5) business days before transmittal of the Gross Settlement Amount.   The Administrator shall deposit the Gross Settlement Amount into a Qualified Settlement Account, from which the

Settlement Administrator will have the authority to distribute money in accordance with the terms of this Settlement Agreement.  Americold shall transit the Gross Settlement Amount and the Employer Taxes, within ten (10) business days following the Effective Date of Settlement.

32.   No Effective Date.   If there is no Effective Date: (i) the Settlement Agreement shall have no force and effect and no Party shall be bound by any of its terms; (ii) Americold shall have no obligation to make any payments required under this Agreement; (iii) the Parties shall evenly distribute and pay any Administration Costs incurred up until the date that the Settlement ceases to exist; and (iv) the Settlement Agreement and all negotiations, statements, proceedings, and data relating thereto shall be protected by Fed. R. Evid. 408 and shall be without prejudice to the rights of any of the Parties, all of whom shall be restored to their respective positions in the Actions prior to the Post-Mediation Status Conference. (*See* Dkt. No. 27.)  In such event, the Parties shall work cooperatively to request a conference with the Court in which to attempt to resolve any issues that the Court has raised regarding the Agreement so that it can gain the Court's approval, or alternatively, effectuate their intent to resume the Actions.

33.   Distribution and Timing of Payments.   Within ten (10) calendar days following receipt of the Gross Settlement Amount and the Employer Taxes, the Settlement Administrator shall issue payments to: (i) Participating Class Members; (ii) Plaintiff; (iii) Class Counsel, and (iv) the Labor Workforce and Development Agency. The Settlement Administrator shall also issue a payment to itself for the Court-approved amount for its services.

34.   Un-cashed Settlement Checks.   Subject to Court approval, any funds represented by Individual Settlement Payment checks remaining un-cashed for more than one hundred eighty (180) calendar days after issuance shall be delivered to California's State Controller, Unclaimed Property Division for further handling on

behalf of the Class Members whose checks were voided.  However, if after 30 days following the mailing of the Individual Settlement Payment Checks, checks remain uncashed, the Administrator shall mail a postcard to each Participating Class Member whose check is uncashed to remind them of the void date.

35.     <u>Administration of Taxes by the Settlement Administrator</u>.  The Settlement Administrator shall be responsible for issuing to Plaintiff, Participating Class Members, and Class Counsel any W-2, 1099, or other tax forms as may be required by law for all amounts paid pursuant to this Settlement.  The Settlement Administrator shall also be responsible for calculating and processing all payroll taxes and penalties for payment to the appropriate government authorities.

## TAX TREATMENT OF SETTLEMENT AMOUNTS

36.     <u>Tax Treatment of Individual Settlement Payments</u>.   The Parties have agreed to allocate the Individual Settlement Payment as follows:  one-third to wages for which an IRS W-2 Form shall be issued, one-third to interest, and one-third to penalties for which IRS 1099 Forms shall be issued.  Normal employee-side payroll taxes and withholding shall be deducted pursuant to state and federal law.

37.     <u>Participating Class Member and Plaintiff's Responsibility for Taxes</u>. Participating Class Members are responsible to pay appropriate taxes due on the Individual Settlement Payments they receive, and Plaintiff is responsible for paying the appropriate taxes due on the Class Representative Service Payment.  All Individual Settlement Payments shall be deemed paid to such Settlement Class Members solely in the year in which such payments are issued. Counsel does not purport this communication to constitute tax or legal advice.  If this Settlement, or any of its attachments, is interpreted to contain or constitute advice regarding any federal or state tax issue, such advice is not intended or written to be used, and cannot be used, by any person to avoid penalties under the federal Internal Revenue Code or any state tax code.

The Notice of Class Action Settlement will advise Class Members that they shall be solely responsible for the payment of any taxes and penalties assessed on their respective Individual Settlement Payments.

38.     Class Counsel shall be issued an IRS Form 1099 for any fees and costs awarded by the Court.

## <u>RELEASE BY THE CLASS</u>

39.     <u>Settlement Terms Bind All Class Members Who Do Not Request Exclusion</u>.  As of the Effective Date, and for the duration of the Class Period and PAGA Period, Plaintiff and all Participating Class Members (on behalf of each of them and each of their heirs, executors, administrators, and assigns) irrevocably and unconditionally fully release and forever discharge the Released Parties from any and all Released Claims as set forth herein.

40.     <u>Circular 230 Disclaimer</u>.  EACH PARTY TO THIS AGREEMENT (FOR PURPOSES OF THIS SECTION, THE "ACKNOWLEDGING PARTY" AND EACH PARTY TO THIS AGREEMENT OTHER THAN THE ACKNOWLEDGING PARTY, AN "OTHER PARTY") ACKNOWLEDGES AND AGREES THAT (1) NO PROVISION OF THIS AGREEMENT, AND NO WRITTEN COMMUNICATION OR DISCLOSURE BETWEEN OR AMONG THE PARTIES OR THEIR ATTORNEYS AND OTHER ADVISERS, IS OR WAS INTENDED TO BE, NOR WILL ANY SUCH COMMUNICATION OR DISCLOSURE CONSTITUTE OR BE CONSTRUED OR BE RELIED UPON AS, TAX ADVICE WITHIN THE MEANING OF UNITED STATES TREASURY DEPARTMENT CIRCULAR 230 (31 CFR PART 10, AS AMENDED); (2) THE ACKNOWLEDGING PARTY (A) HAS RELIED EXCLUSIVELY UPON HIS, HER, OR ITS OWN, INDEPENDENT LEGAL AND TAX COUNSEL FOR ADVICE (INCLUDING TAX ADVICE) IN CONNECTION WITH THIS AGREEMENT, (B) HAS NOT ENTERED INTO THIS

AGREEMENT BASED UPON THE RECOMMENDATION OF ANY OTHER PARTY OR ANY ATTORNEY OR ADVISOR TO ANY OTHER PARTY, AND (C) IS NOT ENTITLED TO RELY UPON ANY COMMUNICATION OR DISCLOSURE BY ANY ATTORNEY OR ADVISER TO ANY OTHER PARTY TO AVOID ANY TAX PENALTY THAT MAY BE IMPOSED ON THE ACKNOWLEDGING PARTY; AND (3) NO ATTORNEY OR ADVISER TO ANY OTHER PARTY HAS IMPOSED ANY LIMITATION THAT PROTECTS THE CONFIDENTIALITY OF ANY SUCH ATTORNEY'S OR ADVISER'S TAX STRATEGIES (REGARDLESS OF WHETHER SUCH LIMITATION IS LEGALLY BINDING) UPON DISCLOSURE BY THE ACKNOWLEDGING PARTY OF THE TAX TREATMENT OR TAX STRUCTURE OF ANY TRANSACTION, INCLUDING ANY TRANSACTION CONTEMPLATED BY THIS AGREEMENT.

41. Release by Plaintiff and Class Representative. As of the Effective Date, and for the duration of the Class Period, Plaintiff (on his behalf and on behalf of his heirs, executors, administrators, and assigns), but not on behalf of other Class Members, knowingly and voluntarily releases and forever discharges the Released Parties from any and all claims, known and unknown, asserted and unasserted, that he had or may have had against Defendant or any of the Released Parties. Such claims include, but are not limited to: breaches of contract, whether written, oral or implied; violations of any public policy; tort claims, including but not limited to intentional infliction of emotional distress and negligent infliction of emotional distress, defamation, misrepresentation, and fraud; retaliation claims; common law claims; any other claims for damages, costs, fees, or other expenses, including attorneys' fees; and any violations of the following statutes, laws, and regulations: Fair Labor Standards Act, 29 U.S.C. §§ 200, *et seq.,* Title VII of the Civil Rights Act of 1964, as amended; The Civil Rights Act of 1991; Sections 1981 through 1988 of Title 42 of the United States Code, as amended; The Americans with Disabilities Act of 1990, as amended; The Age

Discrimination in Employment Act of 1967, as amended; the Older Workers Benefit Protection Act; the Employment Retirement Income Security Act of 1974, as amended; the Occupational Safety and Health Act, as amended; the Sarbanes-Oxley Act of 2002; the Family and Medical Leave Act of 1993, as amended; the Fair Labor Standards Act; the California Fair Employment and Housing Act – Cal. Gov't Code § 12900 *et seq.*; the California Family Rights Act – Cal. Gov't Code § 12945.2 *et seq.*; the California Unruh Civil Rights Act – Civ. Code § 51 *et seq.*; the California Whistleblower Protection Law – Cal. Lab. Code § 1102.5; the California Occupational Safety and Health Act, as amended – Cal. Lab. Code § 6300 *et seq.*, and any applicable regulations thereunder; the California Business and Professions, Civil, Government and Labor Code; the Labor Code Private Attorneys General Act of 2004 – Cal. Lab. Code § 2698 *et seq.*; and any other federal, state, or local civil employment law, statute, regulation, or ordinance capable of being released by Plaintiff, excluding any claims that cannot be released as a matter of law.  To the extent the foregoing release is a release to which California Civil Code section 1542 or similar provisions of other applicable law may apply, Plaintiff expressly waives any and all rights and benefits conferred upon them by the provisions of California Civil Code section 1542 or similar provisions of applicable law which are as follows:

**A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR.**

Thus, notwithstanding the provisions of California Civil Code section 1542, and to implement a full and complete release and discharge, Plaintiff expressly

acknowledges this Settlement is intended to include in its effect, without limitation, all known and unknown claims, including any claims they do not know or suspect to exist in their favor against the Released Parties at the time of signing this Settlement, and that this Settlement contemplates the extinguishment of any such claim or claims. Plaintiff acknowledges he may later discover facts different from or in addition to those they now know or believe to be true regarding the matters released or described in this Settlement, and nonetheless agrees that the releases and agreements contained in this Settlement shall remain fully effective in all respects notwithstanding any later discovery of any different or additional facts. Plaintiff assumes any and all risks of any mistake in connection with the true facts involved in the matters, disputes, or controversies described in this Settlement or with regard to any facts now unknown to him relating to such matters.

41.  <u>No Prior Assignments</u>.  The Parties and their counsel represent, covenant, and warrant that they have not directly or indirectly assigned, transferred, encumbered, or purported to assign, transfer, or encumber to any person or entity any portion of any liability, claim, demand, action, cause of action or right herein released and discharged.

## **ADDITIONAL TERMS**

42.  <u>Exhibits Incorporated by Reference</u>.  The terms of this Settlement include the terms set forth in any attached Exhibits, which are incorporated by this reference as though fully set forth herein.  Any Exhibits to this Settlement are an integral part of the Settlement.

43.  <u>Entire Agreement</u>.  This Settlement and attached Exhibits constitute the entirety of the Parties' settlement terms.  No other prior or contemporaneous written or oral agreements may be deemed binding on the Parties.  The Parties expressly recognize California Civil Code section 1625 and California Code of Civil Procedure section 1856(a), which provide that a written agreement is to be construed according to its terms and may not be varied or contradicted by extrinsic evidence, and the Parties agree that

no such extrinsic oral or written representations or terms shall modify, vary or contradict the terms of this Settlement.

44. <u>Amendment or Modification</u>.  No amendment, change, or modification to this Settlement shall be valid unless in writing and signed, either by the Parties or their counsel.

45. <u>Authorization to Enter Into Settlement</u>. Counsel for all Parties warrant and represent they are expressly authorized by the Parties whom they represent to negotiate this Settlement and to take all appropriate action required or permitted to be taken by such Parties pursuant to this Settlement to effectuate its terms and to execute any other documents required to effectuate the terms of this Settlement.  The Parties and their counsel shall cooperate with each other and use their best efforts to effect the implementation of the Settlement.  If the Parties are unable to reach agreement on the form or content of any document needed to implement the Settlement, or on any supplemental provisions that may become necessary to effectuate the terms of this Settlement, the Parties may seek the assistance of the Court to resolve such disagreement.

46. <u>Binding on Successors and Assigns</u>.  This Settlement shall be binding upon, and inure to the benefit of, the successors or assigns of the Parties hereto, as previously defined.

47. <u>California Law Governs</u>.  All terms of this Settlement and Exhibits hereto shall be governed by and interpreted according to the laws of the State of California.

48. <u>Execution and Counterparts</u>.  This Settlement is subject only to the execution of all Parties.  However, the Settlement may be executed in one or more counterparts.  All executed counterparts and each of them, including facsimile and scanned copies of the signature page, shall be deemed to be one and the same instrument provided that counsel for the Parties shall exchange among themselves original signed counterparts.

49.   <u>Acknowledgement that the Settlement is Fair and Reasonable</u>.  The Parties believe this Settlement is a fair, adequate and reasonable settlement of the Actions and have arrived at this Settlement after arm's-length negotiations and in the context of adversarial litigation, taking into account all relevant factors, present and potential.  The Parties further acknowledge that they are each represented by competent counsel and that they have had an opportunity to consult with their counsel regarding the fairness and reasonableness of this Settlement.

50.   <u>Acknowledgement of Future Legislation</u>.   Each Party recognizes that legislation, could affect the outcome of the Actions.  The Parties, nevertheless, enter into this settlement to avoid risk of loss and to avoid uncertainty with the interpretation, nature, and applicability of future legislation.

51.   <u>Invalidity of Any Provision</u>.   Before declaring any provision of this Settlement invalid, the Court shall first attempt to construe the provision as valid to the fullest extent possible consistent with applicable precedents so as to define all provisions of this Settlement valid and enforceable.

52.   <u>Waiver of Certain Appeals</u>.  The Parties agree to waive appeals and to stipulate to class certification for purposes of this Settlement only; except, however, that Plaintiff or Class Counsel may appeal any reduction to the Attorneys' Fees or the Attorneys' Costs below the amounts they request from the Court, and either party may appeal any court order that materially alters the Settlement terms.

53.   <u>Non-Admission of Liability</u>.  The Parties enter into this Settlement to resolve the dispute that has arisen between them and to avoid the burden, expense and risk of continued litigation.  In entering into this Settlement, Americold and the Released Parties do not admit, and specifically deny, that Americold or any Released Parties violated any federal, state, or local law; violated any regulations or guidelines promulgated pursuant to any statute or any other applicable laws, regulations or legal requirements; breached any contract; violated or breached any duty; engaged in any

misrepresentation or deception; or engaged in any other unlawful conduct with respect to their employees.  Neither this Settlement, nor any of its terms or provisions, nor any of the negotiations connected with it, shall be construed as an admission or concession by Americold (or any Released Parties) of any such violations or failures to comply with any applicable law.  Except as necessary in a proceeding to enforce the terms of this Settlement, this Settlement and its terms and provisions shall not be offered or received as evidence in any action or proceeding to establish any liability or admission on the part of Americold (or any Released Parties) or to establish the existence of any condition constituting a violation of, or a non-compliance with, federal, state, local or other applicable law.

54.  <u>Waiver</u>.  No waiver of any condition or covenant contained in this Settlement or failure to exercise a right or remedy by any of the Parties hereto shall be considered to imply or constitute a further waiver by such Party of the same or any other condition, covenant, right or remedy.

55.  <u>Enforcement Actions</u>.  In the event that one or more of the Parties institutes any legal action or other proceeding against any other Party or Parties to enforce the provisions of this Settlement or to declare rights and/or obligations under this Settlement, the successful Party or Parties shall be entitled to recover from the unsuccessful Party or Parties reasonable attorneys' fees and costs, including reasonable expert witness fees incurred in connection with any enforcement actions.

56.  <u>Mutual Preparation</u>.  The Parties have had a full opportunity to negotiate the terms and conditions of this Settlement.  Accordingly, this Settlement shall not be construed more strictly against one party than another merely by virtue of the fact that it may have been prepared by counsel for one of the Parties, it being recognized that, because of the arms-length negotiations between the Parties, all Parties have contributed to the preparation of this Settlement.

57.  <u>Representation By Counsel</u>.  The Parties acknowledge that they have been

represented by counsel throughout all negotiations that preceded the execution of this Settlement, and that this Settlement has been executed with the consent and advice of counsel.  Further, Plaintiff and Class Counsel warrant and represent that there are no liens on the Settlement.  Class Counsel also represents that there are no attorneys who have or could have any liens with respect to any aspect of this Settlement, or any funds received by the Named Plaintiff.

58.   <u>All Terms Subject to Final Court Approval</u>.  All amounts and procedures described in this Settlement herein shall be subject to final Court approval.

59.   <u>Cooperation and Execution of Necessary Documents</u>.  All Parties shall cooperate in good faith and execute all documents to the extent reasonably necessary to effectuate the terms of this Settlement.

60.   <u>Binding Agreement</u>.  The Parties warrant that they understand and have full authority to enter into this Settlement, and further intend that this Settlement shall be fully enforceable and binding on all parties, and agree that it shall be admissible and subject to disclosure in any proceeding to enforce its terms, notwithstanding any mediation confidentiality provisions that otherwise might apply under federal or state law.

61.   <u>Notices</u>.  Unless otherwise specifically provided, all notices, demands or other communications given shall be in writing and shall be deemed to have been duly given by the third business day after mailing by United States registered or certified mail, return receipt requested, addressed as follows:

**To Plaintiff and the Class**:
Michael D. Singer
Diana M. Khoury
Kristina De La Rosa
COHELAN KHOURY & SINGER
605 C Street, Suite 200
San Diego, CA 92101

DocuSign Envelope ID: 1787595E-7C42-46A3-AA57-FCDE2F91CF41

1

**To Defendant Americold**:
Rebecca M. Aragon
LITTLER MENDELSON, P.C.
633 West Fifth Street, 63rd Floor
Los Angeles, CA 90071

2

3

4   **AGREED.**

5                                      **PLAINTIFF JOSE CONTRERAS**

6

7   Dated: _____3/13/2020_____      _____

8                                      Jose Contreras

9

10                                     **DEFENDANT AMERICOLD**
                                       **LOGISTICS, LLC**
11

12

13  Dated: _____           By: _____

14                                          NAME:
                                            TITLE:
15                                          Americold Logistics, LLC

16  **APPROVED AS TO FORM:**

17

18  Dated: ___March 13, 2020___       /s/ _Diana M. Khoury_____
                                       MICHAEL D. SINGER
19                                     DIANA M. KHOURY
                                       KRISTINA DE LA ROSA
20                                     COHELAN KHOURY & SINGER
                                       Attorneys for Plaintiff
21                                     JOSE CONTRERAS

22

23  Dated: _____           /s/ _____
                                       REBECCA M. ARAGON
24                                     BRITNEY N. TORRES
                                       LITTLER MENDELSON, P.C.
25                                     Attorneys for Defendant
                                       AMERICOLD LOGISTICS, LLC
26

27

28

**To Defendant Americold:**
Rebecca M. Aragon
LITTLER MENDELSON, P.C.
633 West Fifth Street, 63rd Floor
Los Angeles, CA 90071

**AGREED.**

                                          **PLAINTIFF JOSE CONTRERAS**


Dated: _____

                                          _____
                                          Jose Contreras


                                          **DEFENDANT AMERICOLD
                                          LOGISTICS, LLC**


Dated:   March 12, 2020                   By: _____
                                          NAME: James C. Snyder Jr.
                                          TITLE: Executive Vice President and Chief
                                          Americold Logistics, LLC  Legal Officer

**APPROVED AS TO FORM:**


Dated: _____           /s/
                                          _____
                                          MICHAEL D. SINGER
                                          DIANA M. KHOURY
                                          KRISTINA DE LA ROSA
                                          COHELAN KHOURY & SINGER
                                          Attorneys for Plaintiff
                                          JOSE CONTRERAS


Dated:   March 12, 2020                   /s/
                                          _____
                                          REBECCA M. ARAGON
                                          BRITNEY N. TORRES
                                          LITTLER MENDELSON, P.C.
                                          Attorneys for Defendant
                                          AMERICOLD LOGISTICS, LLC



                          33.              Case No. 5:19-cv-00641-GW (SHKx)
          JOINT STIPULATION OF CLASS ACTION SETTLEMENT AND RELEASE

Exhibit 1 Page 53

# EXHIBIT A

Exhibit 1 Page 54

*Contreras vs. Americold Logistics, LLC*
United States District Court, Central District of California, Western Division
Case No. 5:19-cv-00641-GW (SHKx)

*A court authorized this Notice. This is not a solicitation.*
*This is not a lawsuit against you and you are not being sued.*
*However, your legal rights are affected whether you act or don't act.*

## <u>NOTICE OF CLASS ACTION SETTLEMENT</u>

To:   All persons employed by Americold Logistics, LLC in California as non-exempt, hourly paid employees at any time during the period from February 22, 2015 through *[120 days of the 12/18/19 mediation or the date of preliminary approval of the Settlement, whichever is earlier]*, ("Class Members", or the "Class")

IF YOU ARE A CLASS MEMBER, YOU ARE ELIGIBLE TO RECEIVE A PAYMENT FROM THE CLASS ACTION SETTLEMENT DESCRIBED IN THIS NOTICE, **<u>WITHOUT THE NEED TO RETURN A CLAIM FORM</u>**, PROVIDED THE ADMINISTRATOR HAS A CURRENT MAILING ADDRESS ON FILE FOR YOU.

| SUMMARY OF YOUR LEGAL RIGHTS AND OPTIONS IN THIS SETTLEMENT | |
|---|---|
| **DO NOTHING** | To receive your Settlement Payment check, you don't need to do anything. Your payment will be automatically mailed to you after the Court grants final approval to the Settlement. |
| **CHANGE CONTACT AND ADDRESS INFORMATION** | Update your personal information to ensure your Settlement Payment check is mailed to the correct address. You may use the enclosed Change of Address form enclosed with this Notice or mail to the Administrator at the address shown in Paragraph _____ of this Notice. |
| **EXCLUDE YOURSELF** | You may exclude yourself ("opt out") of the Settlement if you do not wish to participate in the Settlement. If you exclude yourself, you will not receive any payment under the Settlement. This is the only option which allows you to keep open the possibility of pursuing claims (in your own lawsuit) against Americold Logistics, LLC for the same wrongs alleged in this case. |
| **OBJECT** | Write to the Court if you think the Settlement is not fair. You may also ask to speak in Court about why you think the Settlement is not fair. **NOTE**: If you ask to exclude yourself from the Settlement, you cannot also object. |

- **YOUR RIGHTS AND OPTIONS – AND THE DEADLINES TO EXERCISE THEM – ARE EXPLAINED IN THIS NOTICE.**

- **AMERICOLD LOGISTICS, LLC WILL NOT RETALIATE IN ANY MANNER AGAINST ANY CLASS MEMBER RELATED TO THIS ACTION.**

## WHAT THIS NOTICE CONTAINS

**BASIC INFORMATION**
    1.  Why did I get this Notice? ..................................................................Page 3
    2.  What is this Action about? ..................................................................Page 3
    3.  Who are the parties in this Action? ....................................................Page 3
    4.  Who are the attorneys for the parties? ...............................................Page 3
    5.  Why is this a class action? ................................................................Page 4
    6.  Why is there a Settlement? ...............................................................Page 4

**THE TERMS OF THE SETTLEMENT**
    7.  What is the Settlement Amount? ........................................................Page 4
    8.  How will the Settlement Payments be calculated? .............................Page 5
    9.  How much will my Settlement Payment be? .......................................Page 5

**HOW TO GET A PAYMENT**
    10. How can I get my Settlement Payment? ............................................Page 5
    11. What do I do if I think my information and/or number of eligible
        Work Weeks are wrong? ..................................................................Page 5
    12. When can I expect to receive my Settlement Payment? .....................Page 6
    13. What am I giving up to get a Settlement Payment? ............................Page 6

**EXCLUDING YOURSELF FROM THE SETTLEMENT**
    14. How do I get out of the Settlement? ..................................................Page 7
    15. If I don't exclude myself from the Settlement, can I sue Americold for
        the same thing later? .......................................................................Page 7
    16. If I exclude myself, can I get money from this Settlement? ................Page 7

**OBJECTING TO THE SETTLEMENT**
    17. How do I tell the Court if I don't like the Settlement? ........................Page 7
    18. What's the difference between objecting and requesting to be excluded from
        the Action? ......................................................................................Page 8

**THE COURT'S FINAL FAIRNESS HEARING**
    19. When and where will the Court decide whether to approve the Settlement? ............Page 8
    20. Do I have to come to the hearing? ....................................................Page 8
    21. May I appear and speak at the hearing? ............................................ Page 9

**GETTING MORE INFORMATION**
    22. Who can I contact if I have questions about the Settlement? ..............Page 9

**ADDITIONAL IMPORTANT INFORMATION** ..................................................Page 9

**EMPLOYEE INFORMATION SHEET** ............................................................Page 10

| BASIC INFORMATION |
|---|

**1.      Why did I get this Notice?**

You received this Notice because Americold Logistics, LLC ("Americold")'s records identify you as an hourly paid, non-exempt California-based employee who worked sometime during the period from February 22, 2015 through _____, 2020.  The purpose of this Notice is to explain the Action, the Settlement, your legal rights, what benefits are available, who is eligible to receive a Settlement Payment, and how to get a Settlement Payment.

The Court in charge of the case is the United States District Court, Central District of California – Western Division; the case is known as the *Contreras v. Americold Logistics*, LLC, Case No. 5:19-cv-00641-GW (SHKx).

**2.      What is this Action about?**

A lawsuit was on filed February 22, 2019 by Plaintiff Jose Contreras, removed to the United States District Court, Central District – Western Division and later amended by First Amended Complaint.  In this lawsuit, Plaintiff claimed that all California-based persons employed by Americold as hourly paid, non-exempt employees at any time during the period from February 22, 2015 through _____, 2020 failed to pay minimum, regular and overtime wages in violation of California Labor Code §§204, 510, 1194, 1197.1, 1198; failed to provide compliant meal periods or compensation in lieu thereof in violation of Labor Code §§ 226.7, 512(a), 1198; failed to provide compliant rest breaks or compensation in lieu thereof in violation of Labor Code §§ 226.7, 512; failed to provide written notice in violation of Labor Code § 2810.5; failed to pay vacation wages in violation of Labor Code §§ 227.3, 218.5;  and derivative claims for Americold's failure to provide accurate and itemized wage statements in violation of Labor Code §§246(i), 226, 226.3, 1174, 1198, 2699; failure to provide all wages due at the time of separation from employment in violation of Labor Code §§201, 201.3, 202, 203, 204, 256, 1198, 2699; and for violation of the Private Attorneys General Act of 2004 (California Labor Code §§ 2698, *et seq.*), based on the alleged Labor Code violations, and based on these allegations, unfair business practices in violation of Business & Professions Code §§ 17200, et seq., ("Action").  Americold answered the First Amended Complaint on July 17, 2019.

Americold has denied all allegations in the Action and contends it has complied with California law at all times.  The Settlement is not an admission of any wrongdoing by Americold Logistics or an indication that any law was violated.

**3.      Who are the Parties in this Action?**

Plaintiff Jose Contreras was employed by Americold as a warehouse forklift driver in Victorville, California from September 2013 to April 2018, when his employment ended.

Defendant Americold Logistics, LLC., is a Delaware Limited Liability Company, providing temperature-controlled infrastructure and offering cold storage warehouses and other related services to food and beverage retailers and manufacturers throughout the United States, including California.

**4.      Why is this a class action?**

In a class action, one or more people called Class Representatives (in this case, Jose Contreras) sue on behalf of themselves and other people who they allege have similar claims. The group of people with allegedly similar claims is called a "class." Each person receiving this notice is a "Class Member" for purposes of this

Settlement. If a Court certifies (or approves) a class, that one court resolves the issues for all Class Members except for those who exclude themselves from the Class and this Settlement. In this Action, there are an estimated 1567 members of the Class that worked some time during the period from February 22, 2015 through _____, 2020, ("Class Period").

### 5. Who are the attorneys for the Plaintiff and Class?

**COHELAN KHOURY & SINGER**
Isam C. Khoury / Michael Singer
Diana M. Khoury / Kristina De La Rosa
605 "C" Street, Suite 200
San Diego, California 92101-5305
Telephone: (619) 595-3001

**LAW OFFICE OF SAHAG MAJARIAN II**
Sahag Majarian II
18250 Venture Blvd.
Tarzana, California 91356
Telephone: (818) 609-0807

If you have questions regarding this Settlement, you should contact Counsel for Plaintiff and the Class or the Administrator.  Do NOT contact the attorneys for Americold, its attorneys, supervisors, or managers.

### 6. Why is there a Settlement?

The Settlement is a compromise.  The two sides disagree on how much money, if any, might have been awarded if the lawsuit went to trial. The Court did not find that Americold violated the law, nor did it decide in favor of Plaintiff Jose Contreras.  Americold denies all allegations of wrongdoing.   There was no trial. Instead, both sides agreed to a no-fault settlement of the Action ("Settlement"). That way, they avoid the cost and risks of a trial and Class Members will get compensation from the Settlement.  Plaintiff Jose Contreras, the appointed Class Representative, and his attorneys think the Settlement is best for all Class Members.

---

## THE TERMS OF THE SETTLEMENT

---

### 7. What is the Settlement Amount?

The proposed Settlement provides for a maximum payment of $2,500,000 to fully and finally resolve all claims in the Action (referred to as the "Gross Settlement Amount"). Out of this amount, Class Counsel will apply to the Court for: (1) attorneys' fees of up to $750,000 (30% of the GSA); (2) litigation costs estimated to be $20,000; (3) a Class Representative service payment of $10,000 to Plaintiff Jose Contreras for his work and effort in prosecuting the Action, for undertaking the risks of payment of costs in the event of an unsuccessful outcome, and a general release of all claims; (4) Administration expenses estimated to be $20,000 to ILYM Group, Inc., the Settlement Administrator, and (5) a payment to the California Labor Workforce and Development Agency, under California Labor Code's Private Attorneys General Act of 2004 ("PAGA") in the sum of $150,000 (75% of $200,000 PAGA Penalty, with the remaining 25% - $50,000 – distributed to PAGA Members) to cover the government's share of all applicable civil penalties implicated or raised by the allegations of the Action. The exact amount of the attorneys' fees and litigation costs, Class Representative service payment, and Administration expenses will be determined by the Court at a Final Approval hearing. The remaining portion of the Settlement, the Net Settlement Amount estimated at $1,550,000. The Net Settlement Amount will be apportioned and paid entirely to all Class Members who do not request to be excluded from (or "opt out" of) the Settlement. **A claim form is not required.** Any portion of the Net Settlement Amount that would otherwise be paid to Class Members who opts out of the Settlement will be redistributed and paid to the Class Members who participate in the Settlement.   In other words, the entire amount of the Net Settlement Amount will be paid to Class Members who do not opt out of the Settlement.

**8.**     <u>How will the Settlement Payments be calculated?</u>

Class Members who worked at any time during the period from February 22, 2018 through _____, 2020, "PAGA Period", will receive a proportionate share of the $50,000 PAGA Penalties based on the number of Pay Periods during the PAGA Period in relation to the aggregate number of Pay Periods worked by all PAGA Members during the PAGA Period.

Class Members who worked at any time during the period from February 22, 2015 through _____, 2020, "Class Period" will also receive a proportionate share of the $1,500,000 (the remaining portion of the Net Settlement Amount) based on the number of Work Weeks worked at any time during the Class Period in relation to the aggregate number of Work Weeks worked by all Class Members during the Class Period.

**9.**     <u>How much will my Settlement Payment be?</u>

The estimated amount of your Individual Settlement Payment is shown on the Employment Information Sheet, Page 10 of this Notice. It is based on your own number of Pay Periods during the PAGA Period and number of Work Weeks worked during the Class Period. The amount shown is an estimate. The actual amount you receive may be more or less than the estimated amount shown, depending on a number of factors including whether other Class Members request exclusion from the Settlement and how much the Court approves in attorneys' fees, litigation expenses, and other costs of suit.

| HOW TO GET A PAYMENT |
|:---:|

**10.**     <u>How can I get my Settlement Payment?</u>

If you do nothing, once the Court approves the Settlement at a Final Approval hearing, your Individual Settlement Payment will be mailed to you automatically. You must, however, notify the Settlement Administrator of any change in your name and/or mailing address if the name and/or address to which this Notice was mailed is not correct. **It is your responsibility to keep the Administrator informed of any change in your mailing address. Your Individual Settlement Payment will be mailed to the last known address it has on file for you.** A Change of Address form and a preprinted return envelope are enclosed for your convenience. You may also call the Administrator at 1-8_____.

**11.**     <u>What do I do if I think my information and/or number of eligible Work Weeks are wrong?</u>

As a Class Member, your Individual Settlement Payment will be based on the number of Pay Periods you worked during the PAGA Period and the number of Work Weeks you worked during the Class Period. The number of your Pay Periods and your Work Weeks is shown on the Employment Information Sheet and obtained from Americold's records. If you believe the information included in the Employment Information Sheet is not right, you may send a letter to the Administrator indicating what you believe to be the correct information. Your letter must be postmarked on or before _____, 2020 [*45 days after the initial mailing*]. You should include any documents or other information supporting your belief that the information provided in the Employment Information Sheet is not correct. The Administrator will resolve any dispute regarding the number of eligible weeks you worked based on Americold's records and any information you provide. The employment data supplied by Americold will be presumed correct unless you supply company records from Americold showing contrary information.

**12.      When can I expect to receive my Settlement Payment?**

If you do not request to be excluded from the Settlement, your Individual Settlement Payment check will be mailed to you approximately 30 days after the Court grants final approval of the Settlement, if there are no objections filed and no appeals are filed or pending.  ***Your Individual Settlement Payment check will be mailed to the address on file for you, which is the address to which this Notice was mailed.***  Again, if this address is not right, or if you move after you receive this Notice, you must inform the Administrator of the correct mailing address. For your convenience, a Change of Address form and a pre-printed return envelope are enclosed. You may also call the Administrator at 1-8_____.

Class Members receiving an Individual Settlement Payment will be responsible for correctly characterizing this compensation for tax purposes and paying taxes due, if any.  If checks remain uncashed after 180 days of issuance, the Administrator will place a stop payment on all such checks and forward the sum represented by these uncashed checks to the California's Secretary of State, Controller, Unclaimed Property Division for further handling on behalf of the Class Member.

**13.      What am I giving up to get a payment?**

Unless you exclude yourself, you are staying in the Class, which means that you can't sue, continue to sue, or be part of any other Action against Americold concerning the legal issues in this Action. Specifically, you will be giving up or  fully releasing and forever discharging Americold Logistics, LLC, its past, present, and future parents, subsidiaries, divisions, and affiliates and their respective past, present, and future officers, directors, employees, partners, shareholders, owners, agents, vendors, affiliates, insurers, legal representatives, attorneys and all of their successors (including persons or entities who may acquire them in the future), assigns, representatives, heirs, executors, and administrators and all other persons acting by, through, under or in concert with them that could be liable ("Released Parties") from :

Any and all claims, debts, rights, demands, obligations or liabilities of every nature and description, whether known or unknown, for damages, penalties, liquidated damages, punitive damages, interest, attorneys' fees, litigation costs, restitution, or equitable relief alleged, in whole or in part, in the Lawsuit (based on the facts alleged in the original class action complaint, the second complaint, the first amended class action complaint, or the letter to the Labor and Workforce Development Agency) arising during the Class Period on behalf of Class Members, including without limitation: (i) failure to pay compensation for all hours worked, (ii) failure to separately pay for all non-productive time, (iii) failure to provide, advise, and inform employees of their right to take meal periods, (iv) failure to authorize, permit, advise, and inform employees of their right to take rest periods, (v) failure to pay for rest periods, (vi) failure to pay minimum wages and vacation wages, (vii) failure to issue accurate itemized wage statements, (viii) waiting time penalties, (ix) violations of California Labor Code §§ 200, 201, 201.3, 201.5, 202, 203, 204, 210, 218, 218.5 221, 222, 223, 225.5, 226, 226.2, 226.3, 226.7, 227.3, 246(i), 256, 510, 512, 512(a),518, 558, 1174, 1174.5, 1175, 1194, 1197, 1197.1, 2810.5,and 1198; (x) violations of Labor Code Private Attorneys General Act of 2004, California Labor Code section 2698, *et seq.* ("PAGA"); (xi) violations of California Business & Professions Code § 17200 *et seq.*; (xii) violations of California Code of Regulations, Title 8, section 11090 *et seq.*; (xiii) violations of IWC Wage Orders, including without limitation IWC Wage Orders 9-1998, 9-2000 and 9-2001; (xiv) as it relates to the underlying Labor Code claims referenced above, interest, attorneys' fees and costs, from four years prior to February 22, 2019 until April 16, 2020 or the date of preliminary approval, whichever date is earlier)]. The release of the foregoing claims extends to all theories of relief regardless of whether the claim is, was or could have been alleged as separate claims, causes of action, lawsuits or based on other theories of relief, whether under federal law, California law or any state law or common law (including, without limitation, as violations of the California Labor Code, the Wage Orders, applicable regulations, California's Business and Professions Code section 17200), any and all claims under the Fair Labor Standards Act and any benefits under any benefit plan, program

or policy sponsored or maintained by the Company, including, but not limited to the Employee Retirement Income Security Act, 29 U.S.C. §1001, *et seq*., but not vested benefits under any pension or 401(k) plan or other ERISA-governed benefit plan. The released claims include all types of relief available for the above-referenced claims, including any claims for damages, restitution, losses, penalties, fines, liens, attorneys' fees, costs, expenses, debts, interest, injunctive relief, declaratory relief, or liquidated damages.

## EXCLUDING YOURSELF FROM THE SETTLEMENT

### 14.     How do I get out of the Settlement?

If you wish to preserve the option to pursue your own separate lawsuit against Americold for the claims asserted in this Action, or if you otherwise wish not to participate in the Settlement for whatever reason, you should request to be excluded from the Settlement.  To exclude yourself from the Settlement, you must submit a written statement requesting exclusion from the Settlement (also referred to in this Notice as "opting out").

Your request for exclusion must (a) state your name, address, telephone number and the last four (4) digits of the social security number; (b) a statement substantially similar to the following:

> "I understand I am asking to be excluded from the Settlement and that by doing this, I will receive no money from the Settlement.  I understand that, if I opt-out of the Settlement, I may bring a separate action against Americold, but I might lose my separate action or win and recover nothing or less than what I would have recovered  under the Settlement provisions in this case."

(c) be addressed to the Administrator and mailed to the Administrator's address shown in Paragraph 17; and (d) be signed by the Class Member. The request to opt out must be postmarked on or before _____, 2020, (45 days of initial mailing).

### 15.     If I don't exclude myself from the Settlement, can I sue Americold for the same thing later?

No. Unless you exclude yourself from this Action, you give up any right to sue Americold for the claims that this Settlement resolves.  *If you have a claim or lawsuit already against Americold, you must speak to your lawyer in that case immediately*. You must ask to exclude yourself from this Action to continue your own lawsuit by returning the request for exclusion postmarked on or before _____, 2020.  [*45 days of the initial mailing]*.

### 16.     If I exclude myself, can I get money from this Settlement?

No. If you exclude yourself, you will not receive an Individual Settlement Payment. The Individual Settlement Payment you would have been entitled to receive will be distributed to Participating Class Members who choose to remain in the Class and to participate.  No portion of the Net Settlement Amount will go back to Americold as a result of any request by Class Members to be excluded from the Settlement.

## OBJECTING TO THE SETTLEMENT

### 17.     How do I tell the Court that I don't like the Settlement?

If you don't think the Settlement is fair, you may object to the Settlement and tell the Court your reasons for disagreeing with the Settlement. This is the process by which you can tell the Court if you think the Settlement as a whole is unfair.  If you think that your Individual Settlement Payment was miscalculated, or the information shown in the Employment Information Sheet is wrong, please use the process set forth in Paragraph 11 above.  If you submit an objection, the Court will consider your views. To object, you must send a letter

stating that you object to the proposed Settlement.  Written objections must be signed by the Class Member and must: (1) state the objecting Class Member's name, address, and telephone number; (2) state the case name and number as follows: *Contreras v. Americold Logistics, LLC*, Case No. 5:19-cv-00641-GW (SHKx); (3) describe in clear and concise terms, the basis for each objection; (4) be dated, and if the Class Member intends to use any document(s) to support an objection, copies of the document(s) should be included with the written objection at the time of submission.  If the Class Member intends to be present at the time of the Final Approval Hearing to discuss the written objections, he or should indicate that fact in the objection letter.  The objection letter must be mailed to the Administer at the address shown below:

> *Americold Logistics Class Action Settlement Administrator*
> c/o ILYM Group, Inc.,
> *[insert address]*
> [insert toll free number]

You may appear in person at the time of the Final Approval Hearing to speak with the Court and discuss your objection.  See Paragraphs 20 and 21.

18.   **What's the difference between objecting and requesting to be excluded from the case?**

Objecting is simply telling the Court you don't like something about the Settlement. You may object only if you stay in the Class. Requesting to be excluded from the Class is telling the Court that you don't want to be part of the Class.  If you choose not to be a part of the Class, you have no basis to object because the case no longer affects you.

If you remain in the Class and object to any of the terms of the Settlement, the Court will consider your written objection when deciding whether to grant final approval to the Settlement.  You do not need to appear to discuss the objection.

| THE COURT'S FINAL FAIRNESS HEARING |
|---|

19.   **When and where will the Court decide whether to approve the settlement?**

The Court will hold a Final Approval Hearing in Courtroom 9D, of the United States District Court, Central District of California located at 350 West 1st Street, Los Angeles, California 90012 on _____, 2020 **at _____:00 a.m.**  At this hearing, the Court will determine whether the Settlement should be finally approved as fair, reasonable, and adequate. The Court will also be asked to approve Class Counsel's request for attorneys' fees and litigation costs, the Class Representative service payment, and the Administrator's fees and expenses.

The Court may reschedule the Final Approval hearing without further notice to Class Members.  However, any Class Member who has filed a written objection will be notified by Class Counsel of any rescheduling of the date and time of the Final Approval hearing.

20.   **Do I have to come to the hearing?**

No.  Class Counsel will answer any questions the Court may have.  If you send an objection, you don't have to come to Court to talk about it.  As long as you mailed your written objection as shown in Paragraph 17, the Court will consider it.  If you plan to attend, your written objection letter should include reference to your intention to appear at the Final Approval Hearing.  You may also hire and pay your own lawyer to attend if you so desire; see Paragraph 21.

**21.     May I appear and speak at the hearing?**

If you have submitted a written objection, you may also personally appear at the Final Approval hearing to discuss your objection.

| GETTING MORE INFORMATION |
|:---:|

**22.     Who can I contact if I have questions about the Settlement?**

This Notice summarizes the proposed Settlement.  More details are in the Joint Stipulation of Class Action Settlement and Release on file with the Court.  You may view the Court's files, located this matter.  The United States District Court, Central District of California is located at 350 West 1st Street, Los Angeles, California 90012 [*confirm files are located here*].  You may view the Court's files any time Monday through Friday, between the hours of 9:00 a.m. and 4:00 p.m., excluding Court holidays.  The case name and case number are *Contreras v. Americold Logistics, LLC*, Case No. 5:19-cv-00641-GW (SHKx).  You may also contact Class Counsel at the contact information listed above in Paragraph 5 if you have any questions about the Settlement. You may also contact the court-appointed Administrator, ILYM Grour, Inc., by calling toll free 1-_____, or you can write to *Contreras v. Americold Logistics* Class Action Administrator at the address shown above in paragraph 17.

**PLEASE DO NOT CONTACT THE CLERK OF THE COURT, THE JUDGE, OR ANY OF THE AMERICOLD MANAGERS, SUPERVISORS, OR ATTORNEYS ABOUT THIS SETTLEMENT.**

| ADDITIONAL IMPORTANT INFORMATION |
|:---:|

A.     **Americold** will not retaliate in any manner whatsoever against any Class Member who stays in the Class and receives a Settlement Payment or who requests to be excluded from the Settlement.

B.     **It is your responsibility to ensure that the Administrator** has your current mailing address and telephone number on file, as this will be the address to which your Individual Settlement Payment will be mailed.

C.     **Settlement Payment checks must be cashed soon after receipt**. Monies represented by checks which remain uncashed after 180 days of the date of issuance will be voided, and handled as described in Paragraph 12, above. If your check is lost or misplaced, you should immediately contact the Administrator immediately to request a replacement.

*Contreras v. Americold Logistics, LLC,*
United States District Court, Central District of California
*Case No. 5:19-cv-00641-GW (SHKx);*

## <u>EMPLOYMENT INFORMATION SHEET</u>

Class Member's Address on File with the Administrator:

Name: _____

Address: _____

City, State, Zip Code: _____

Americold Logistics, LLC's records reflect that you are/were employed as an hourly paid, non-exempt California employee sometime during the Class Period, from February 22, 2015 through through _____, 2020 and shows the following:

- You have _____ [*insert # or N/A*] Pay Periods worked during the PAGA Period (February 22, 2018 through _____, 2020).

- You have _____ [*insert #]* Work Weeks worked during the Class Period, (February 22, 2015 through _____, 2020).

Based on the number of Pay Periods and Work Weeks shown above (obtained from Americold Logistics' records), it is estimated you will receive an estimated **$__,** less applicable payroll taxes. The amount shown is an estimate. The actual amount you receive may be more or less than the estimated amount shown, depending on a number of factors.

**You do not have to take any action to receive your Settlement Payment. It will be mailed to you at the address shown above. If your address has changed, or is different than the address shown above, you <u>must return</u> the enclosed Change of Address form to notify the Administrator your Settlement Payment must be mailed to a different address than shown above. You may also contact the Administrator by calling toll-free _____.**

Again, Settlement Payment checks will be voided 180 days after issuance, and forwarded to the Unclaimed Property Division of the State of California's Controller's Department. It is highly recommended that after receipt of your Settlement Payment check, you immediately deposit or cash it.

4827-2925-7910.1 100143.1007

# EXHIBIT B

Exhibit 1 Page 65

*Contreras v. Americold Logistics, LLC,*
United States District Court, Central District of California
*Case No. 5:19-cv-00641-GW (SHKx);*


## <u>CHANGE OF ADDRESS FORM</u>


I wish to change my name and/or mailing address and/or other contact information to the following:

Name:_____

Former Name (if applicable):_____

Street and Apt. No., if any:_____

City, State and Zip Code:_____

Telephone(s): (Home):_____; (Cell):_____

Email:_____


I understand all future correspondence in this Action, including but not necessarily limited to important notices or Settlement Payments, will be sent to the address listed above and not to the address previously used.  I hereby request and consent to the use of the address listed above for these purposes.

Submitted by:

DATED: _____, 2020          Print Name:  _____

Signature:  _____


**PLEASE RETURN THIS FORM IN THE ENVELOPE PROVIDED
OR VIA UNITED STATES FIRST-CLASS MAIL TO:**

*Americold Logistics Class Action Settlement Administrator*
c/o ILYM Group, Inc.,
*[insert address*]
[insert toll free number]


QUESTIONS? CALL TOLL FREE – (800) _____

### <u>CHANGE OF ADDRESS FORM</u>

Exhibit 1 Page 66

# EXHIBIT C

Exhibit 1 Page 67

1
2
3
4
5
6
7
8               UNITED STATES DISTRICT COURT

9     CENTRAL DISTRICT OF CALIFORNIA – WESTERN DIVISION

10   | JOSE CONTRERAS, on behalf of | Case No. 5:19-cv-00641-GW (SHKx) |

JOSE CONTRERAS, on behalf of
himself and other similarly-situated
employees,

         Plaintiff,

    vs.

AMERICOLD LOGISTICS, LLC, a
Delaware Limited Liability
Company; and DOES 1 through 10,
inclusive,

        Defendants.

Case No. 5:19-cv-00641-GW (SHKx)

**CLASS ACTION**

**[PROPOSED]**

**ORDER GRANTING PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

Filed:      February 22, 2019
Removed:  April 10, 2019
Trial Date:  None

The Court, having fully reviewed the Motion for Order Granting Preliminary Approval of Class Action Settlement, the supporting Points and Authorities, Declarations of Class Counsel Isam C. Khoury and Sahag Majarian II, the   Joint Stipulation of Class Action Settlement and Release ("Agreement"), and the proposed Notice of Class Action Settlement, and in recognition of the Court's duty to make a preliminary determination as to the reasonableness of any proposed class action settlement and, if preliminarily determined to be reasonable, to ensure proper notice is provided to Class Members in accordance with due process requirements, and to conduct a Final Approval hearing as to the good faith, fairness, adequacy and reasonableness of any proposed settlement, HEREBY MAKES THE FOLLOWING DETERMINATIONS AND ORDERS:

1.     The Court now finds, on a preliminary basis, that the Agreement attached to the Declaration of Isam C. Khoury as Exhibit "1" incorporated by reference in full and made a part of this Order of preliminary approval, appears to be within the range of reasonableness of a settlement which could ultimately be given final approval by this Court.  The Court notes that Defendant Americold Logistics, LLC has agreed to pay the Gross Settlement Amount of $2,500,000 in full satisfaction of the claims as more specifically described in the Agreement ("Settlement").

2.     Further, it appears to the Court on a preliminary basis that: (a) the non-reversionary Gross Settlement Amount is fair and reasonable to Class Members when balanced against the probable outcome of further litigation relating to class certification, liability and damages issues and potential appeals; (b) significant investigation, research, and discovery, have been conducted such that respective counsel for each of the Parties at this time are able to reasonably evaluate their respective positions; (c) settlement at this time will avoid substantial costs, delay, and risks that would be presented by the further prosecution of the litigation; and (d) the proposed Settlement has been reached as the result of intensive, serious, and non-collusive arms'-length negotiations between the Parties facilitated by an experienced wage and hour mediator.

ACCORDINGLY, GOOD CAUSE APPEARING, THE MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT IS HEREBY GRANTED.

3.     As a part of the Court's preliminary approval, it finds for settlement purposes only, that the Class meets the requirements of Rules 23(a) and (b)(3) of the Federal Rules of Civil Procedure, and the Court accepts and incorporates the Agreement and hereby conditionally certifies the Class of persons, for purposes of this Settlement only, pursuant to the Agreement's terms and conditions as follows: "all individuals employed by Americold Logistics, LLC in the State of California as hourly non-exempt employees at any time during the period from February 22, 2015 through _____, 2020."

4.     The Court approves and appoints Plaintiff Jose Contreras as the Class Representative.

5.     The Court approves and appoints Cohelan, Khoury & Singer and Law Office of Sahag Majarian II, as Class Counsel.

6.     The Court approves and appoints ILYM Group, Inc., as the Settlement Administrator to administer the Settlement pursuant to the terms of the Settlement Agreement.

7.     The Court finds that the Notice of Class Action Settlement ("Class Notice") together with the Change of Address form (Exhibits A and B to the Agreement, and together with a pre-printed return envelope, collectively "Notice Packet") advises the Class of the pendency of the Class Action, of the proposed Settlement terms, of the preliminary Court approval of the Settlement, of the automatic payment of a proportionate share of the Settlement monies if the Class Member does not request to be excluded, of the released claims, of the estimated amount each may expect to receive pursuant to the proposed Settlement, of their right to submit objections or requests for exclusion and of the manner and timing for doing either of these acts.

8.     The Court further finds the proposed Class Notice and the proposed method of dissemination fairly and adequately advises the Class of the terms of the proposed Settlement, of their rights, of the benefits available to Class Members, and of the Final Approval hearing date, time and place, and their right to file documentation in support of or in opposition to the Settlement and to appear in connection with said hearing. The Court finds the Class Notice clearly comports with all constitutional requirements including those of due process and, when completed, shall constitute sufficient notice to the Class Members. ACCORDINGLY, GOOD CAUSE APPEARING, THE COURT HEREBY APPROVES THE PROPOSED CLASS NOTICE.

9.     The Court finds the mailing to the Class Member's present and last known address, with safeguards to perform reasonable skip traces of returned as undeliverable Notices Packets, constitutes an effective method of notifying Class Members of their rights with respect to the proposed Settlement. ACCORDINGLY, IT IS HEREBY ORDERED that:

A.     On or before 14 calendar days of the Order Granting Preliminary Approval, Defendant shall forward to the appointed Administrator, the Class Data as provided for by the terms of the Agreement;

B.     On or before 14 business days of receipt of the Class Data, the Administrator shall mail the Notice Packets, in both English and Spanish, to each Class Member, by first class United States mail, postage pre-paid.  The exterior of the mailing envelope shall include the following language below the Administrator's address:

> Important Legal Document:
> You may get Money from a Class Action
> Settlement; your prompt reply to correct a
> Bad address is required.

The Administrator shall take those measures specified, and on the conditions set forth in the Agreement, for updating an address subsequent to the first mailing of a Notice Packet

C.     All mailings shall be made to the present and/or last known mailing address of the Class Members based on Defendant's records, and as may be updated and located by the Administrator and as may be provided to the Administrator by Class Counsel or Americold's counsel. The Court finds, and so orders, that the mailing of Notice Packets to the Class as set forth in the Agreement and this paragraph is the best means practicable by which to reach Class Members and is reasonable and adequate pursuant to all constitutional and statutory requirements including all due process requirements; and,

10.     IT IS FURTHER ORDERED that:

A.     Requests for Exclusion. Requests for exclusion from the Settlement must be mailed to the Administrator in the manner set forth in the Class Notice, postmarked no later than the Response Deadline.  If the Notice Response Deadline falls on a Saturday or Federal Holiday, it will be extended to the next day which the U.S. Postal Service is open.  The Response Deadline will be extended fifteen (15) calendar days for any Class Member who is re-mailed a Notice Packet by the Settlement Administrator, unless the 15th day falls on a Sunday or Federal holiday, in which case the Response Deadline will be extended to the next day on which the U.S. Postal Service is open.  The Response Deadline may also be extended by express agreement between Class Counsel and Defendant.

B.     Objections.  Written letters of objection to the Settlement may be mailed to the Administrator in the manner set forth in the Class Notice, postmarked on or before the Response Deadline.  Any written letter of objection should be signed by the Class Member and/or his or her representative; include the objecting Class Member's name, address, telephone number; the last four digits of his/her Social Security number, and the case name and number as shown in the Class Notice; the basis for each objection, and whether or not the Class Member intends to appear at the final approval hearing.

11.    IT IS FURTHER ORDERED that within fourteen (14) days of the Response Deadline, Class Counsel shall file their application for awards of reasonable attorneys' fees and litigation expenses, the Class Representative Service Payments, and the Administrator's expenses.

12.    IT IS FURTHER ORDERED, that all papers in support of the Motion for Order Granting Final Approval of the Class Action Settlement shall be filed at least twenty-eight (28) calendar days before the Final Fairness/Final Approval hearing.

13.    IT IS FURTHER ORDERED that the Final Fairness / Final Approval hearing shall be held before the undersigned at _____ p.m. a.m. on _____, 2020, in the above-entitled Court, the United States District Court, Central District – Western Division, 350 West 1st Street, Los Angeles, California 90012 to consider the fairness, adequacy and reasonableness of the proposed Settlement preliminarily approved by this Order of Preliminary Approval, and to consider the application of Class Counsel for awards of reasonable attorneys' fees and litigation expenses, the Class Representative Service Payments, and the Administrator's expenses.

14.    IT IS FURTHER ORDERED that if, for any reason, the Court does not execute and file an Order Granting Final Approval and Judgment, or if the Effective Date, as defined by the  Agreement, does not occur for any reason whatsoever, the Agreement and the proposed Settlement subject of this Order and all evidence and proceedings had in connection therewith, shall be null and void and without prejudice to the status quo ante rights of the Parties to the litigation as more specifically set forth in the Agreement.

15.    IT IS FURTHER ORDERED that Defendant shall, in compliance with the Class Action Fairness Act, 28 U.S.C. § 1715, serve written notice of the proposed Settlement on the U.S. Attorney General and the appropriate California state official, along with the appropriate state official in every state where a Class Member resides no later than five (5) days of the issuance of this Order if not earlier completed prior to the hearing on Plaintiff's Motion for Order Granting Preliminary Approval.  Defendant

1   shall submit a statement of compliance with the Court in a timely manner to prevent
2   delay of the Effective Date.

3       16.    IT IS FURTHER ORDERED that, pending further order of this Court, all
4   proceedings in this matter except those contemplated by this Order and in the
5   Agreement are stayed.

6       17.    The Court expressly reserves the right to adjourn or to continue the Final
7   Approval hearing from time-to-time without further notice to Class Members, except
8   that notice of a continuance shall be provided to all Class Members who submit written
9   objections.   In the event the Settlement does not become final for any reason, this
10  Preliminary Approval Order shall be of no further force or effect and the fact that the
11  Parties were willing to stipulate to class certification as part of the Settlement shall have
12  no bearing on, and not be admissible in connection with, the issue of whether a class
13  should be certified in a non-settlement context.

14  IT IS SO ORDERED.

15

16  Dated:                    _____
17                                    The Honorable George H. Wu
                                      United States District Court
18                                    Central District of California-Western Division

19

20

21

22

23

24

25

26

27

28

# EXHIBIT D

Exhibit 1 Page 75

1
2
3
4
5
6
7
8

UNITED STATES DISTRICT COURT

9

CENTRAL DISTRICT OF CALIFORNIA – WESTERN DIVISION

10

| | |
|---|---|
| JOSE CONTRERAS, on behalf of himself and other similarly-situated employees, | Case No. 5:19-cv-00641-GW (SHKx)<br><br>**CLASS ACTION**<br><br>**[PROPOSED]**<br><br>**ORDER GRANTING FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND ENTERING JUDGMENT** |
| Plaintiff, | |
| vs. | |
| AMERICOLD LOGISTICS, LLC, a Delaware Limited Liability Company; and DOES 1 through 10, inclusive, | |
| Defendants. | Filed:      February 22, 2019<br>Removed:  April 10, 2019<br>Trial Date:  None |

This matter came on for hearing on _____, 2020 at ___ a.m., in Courtroom 9D of the above-captioned Court on Plaintiff's Unopposed Motion for Order Granting Final Approval of Class Action Settlement and Entering Judgment pursuant to this Court's Order Granting Preliminary Approval of Class Action Settlement [Dkt. ___], and the fully-executed Joint Stipulation of Class Action Settlement ("Settlement Agreement") [Dkt. _____, pgs ____]. Pursuant to the Preliminary Approval Order, Class Members were given notice of the terms of the proposed settlement as set forth in Section 7 of the Notice of Class Action Settlement and pursuant to the Settlement Agreement ("Settlement"), and the opportunity to comment upon, request to be excluded or object to the Settlement or any of its terms.  Having received and considered the proposed Settlement, the supporting papers filed by the Parties, and the evidence and argument received by the Court in conjunction with the Motion for Order Granting Preliminary Approval of Class Action Settlement [Dkt. ___], and the Motion for Order Granting Final Approval, the Court grants final approval of the settlement as set forth in the Settlement Agreement and HEREBY ORDERS AND MAKES THE FOLLOWING DETERMINATIONS:

1.     Pursuant to the Order Granting Preliminary Approval of Class Action Settlement, the Court-approved Notice of Class Action Settlement, Change of Address form, in English and Spanish, and a pre-printed return envelope ("Notice Packet") were mailed to all Class Members by first-class mail.  The Notice Packet notified Class Members of their rights (1) to receive their share of the Settlement without a claim form, (2) to object to the Settlement and the deadline to submit an objection; (3) to request exclusion and the deadline to do so; (4) to appear at the Final Approval Hearing, and (5) the number of Work Weeks and number of Pay Period upon which their Settlement Payment would be calculated and the estimated amount of their Individual Settlement Payments.

2.     The Court finds and determines that this notice procedure afforded adequate protections to Class Members and provides the basis for the Court to make an

informed decision regarding approval of the Settlement based on the response of the Class. No objections were presented by any Class Member and only ___ individual, identified in the ILYM Declaration, requested exclusion from the Settlement.  The Court finds and determines that the notice provided in this case was the best notice practicable, which satisfied the requirements of law and due process.

3.     The Court further finds and determines that the terms of the Settlement are fair, reasonable and adequate to the Class and to each Class Member and that the Settlement is ordered finally approved, and that all terms and provisions of the Settlement should be and hereby are ordered to be consummated subject to the Effective Date expiration periods and other conditions set forth in the Settlement Agreement.

4.     The Court confirms the law firms of Cohelan Khoury & Singer and Law Office of Sahag Majarian, II as Class Counsel.

5.     The Court confirms the Plaintiff Jose Contreras as the Class Representative.

6.     The Court finds and determines that the Settlement Payments to be paid to _____ Participating Class Members as provided for by the Settlement Agreement are fair and reasonable. The Court hereby grants final approval to and following the Effective Date expiration periods and other conditions set forth in the Settlement Agreement orders the payment of those amounts be made in accordance with the terms of the Settlement Agreement.

7.     Pursuant to the terms of the Settlement, and the authorities, evidence and argument submitted by Class Counsel, the Court awards Class Counsel attorneys' fees of $750,000 and reimbursement of their litigation costs of $_____. The Court finds and determines that such amounts are fair and reasonable and following the Effective Date expiration periods and other conditions set forth in the Settlement Agreement orders the Administrator to make these payments in accordance with the terms of the Settlement Agreement.

8.    The Court approves Class Representative Service Payment of $10,000 to Jose Contreras in consideration of (i) their initiation and prosecution of the Action, (ii) service as the sole representative for the Class, (iii) work performed, (iv) risks undertaken for the payment of costs in the event the case had not concluded successfully, (v) general release of all claims, and (vi) the substantial benefits conferred upon all Participating Class Members.

9.    The Court finds and determines that payment to the California Labor and Workforce Development Agency of $150,000 as its share of the Settlement of civil penalties under the Private Attorneys Generals Act is fair, reasonable, and appropriate. The Court hereby grants final approval to and following the Effective Date expiration periods and other conditions set forth in the Settlement Agreement orders that amount be paid in accordance with the Agreement.

10.    The Court further finds and determines that payment of the fees and costs of the appointed Administrator, ILYM Group, Inc., of $_____ for services rendered and to be rendered in connection with the completion of its administrative duties pursuant to the Settlement.

11.    Without affecting the finality of this Order in any way, the Court retains jurisdiction of all matters relating to the interpretation, administration, implementation, effectuation and enforcement of this order and the Settlement.

12.    Nothing in this order shall preclude any action to enforce the Parties' obligations under the Settlement or under this Order.

13.    The Parties are hereby ordered to comply with the terms of the Settlement.

14.    The Parties shall bear their own costs and attorneys' fees except as otherwise provided by the Settlement Agreement and this Order Granting Class Counsels' attorneys' fees and reimbursement of litigation costs.

///

///

///

15.     The Court hereby enters final judgment in this case accordance with the terms of the Settlement, Order Granting Preliminary Approval of Class Action Settlement, and this Order.

IT IS SO ORDERED.

Dated:                    _____

The Honorable George H. Wu
United States District Court
Central District of California-Western Divison

# EXHIBIT 2

# COHELAN KHOURY & SINGER

A PARTNERSHIP OF PROFESSIONAL LAW CORPORATIONS

TIMOTHY D. COHELAN, * APLC
ISAM C. KHOURY, APC
DIANA M. KHOURY, APC
MICHAEL D. SINGER, •APLC

(*Also admitted in the District of Columbia)
(•Also admitted in Colorado)

**ATTORNEYS AT LAW**

605 "C" STREET, SUITE 200
SAN DIEGO, CALIFORNIA 92101-5305
Telephone: (619) 595-3001
Facsimile: (619) 595-3000
**www.ckslaw.com**

JEFF GERACI ∆
J. JASON HILL†
MARTA MANUS
KRISTINA DE LA ROSA

(† Also admitted in Illinois)
(∆ Of Counsel)

    **TIMOTHY D. COHELAN** and **ISAM C. KHOURY** are the founding partners of **COHELAN KHOURY & SINGER**, a civil litigation firm established in 1981. Since 1987, Cohelan Khoury & Singer has specialized in class action cases and has been certified as class counsel and lead counsel in numerous state and federal court cases throughout the United States. The firm has successfully prosecuted well over 150 class action cases representing diverse groups of victims, including urban homeless entitled to emergency shelter; victims of a national health insurance fraud scheme; retirees entitled to pension benefits; defrauded investors; consumers; and workers entitled to back wages. Cohelan Khoury & Singer's diverse practice currently includes representation of, among others, employees contesting wage and hour violations as well as consumers battling unfair business practices.

    Cohelan Khoury & Singer has a broad array of experience in prosecuting class action cases. The firm has successfully achieved a landmark California Supreme Court reversal of a court of appeal reversal of a trial court grant of certification affecting over 100,000 workers in *Brinker Restaurant Corp. v. Super. Ct.* (2012) 53 Cal.4th 1004, as well as a groundbreaking reversal of a class certification denial in *Hicks v. Kaufman and Broad* (2001) 89 Cal.App.4th 908. Cohelan Khoury & Singer has also achieved statewide recognition for pro bono public interest work including successful cases prosecuted on behalf of homeless persons in *Hoffmaster v. City of San Diego* (1997) 55 Cal.App.4th 1098.

    Cohelan Khoury & Singer's public interest work has been recognized in numerous cases including that of United States District Court Judge Milton Pollack, a Senior United States District Court Judge for the Southern District of New York, who has publicly stated that he had "seen no similar indication of a public service rendered by any group of lawyers in all the years I have practiced law myself, which is for 38, or the 27 years that I have been on the bench." Judge Pollack's comments came in connection with a class action case brought on behalf of thousands of victims of health insurance fraud across the nation.

    The firm has substantial trial experience in class action, representative, and complex litigation, as well as individual matters. Cohelan Khoury & Singer is one of a handful of firms to have tried class action wage and hour cases, including an independent contractor misclassification action on behalf of newspaper carriers against the Orange County Register and an action for unpaid wages, wage deductions, and expense

Exhibit 2 Page 81

reimbursements on behalf of a certified class of truckers and appliance installation helpers. The firm also tried to judgment a certified case against the State of Hawaii Child Support Enforcement Agency for wrongful retention of child support monies. The agency was ordered to conduct an accounting and pay the funds to the custodial parents. The firm has also represented large numbers of individuals collectively for construction defect claims and major investment frauds, recovering monies related to cracked slab foundations and defrauded investors of Ponzi schemes.

Cohelan Khoury & Singer has certified classes in heavily contested hearings against the following entities:

1. Atlantic Richfield Corporation, Chevron Corporation, Exxon Corporation, Mobil Oil Corporation, Shell Oil Company, Texaco, Inc., Tosco Corporation, Ultramar Corporation, and Unocal Corporation
2. Empire Blue Cross/Blue Shield
3. Pioneer Mortgage
4. Liebert Corporation
5. PaineWebber, Inc.
6. Dayton Hudson Corp.
7. Chartwell Financial
8. Cal Fed, Inc.
9. Jones, American Thrift
10. Service Technicians, Inc.
11. Kaufman & Broad
12. Washington Mutual Bank
13. Albertson's, Inc.
14. Wells Fargo Home Mortgage, Inc.
15. Brinker Restaurant Corporation
16. FedEx Ground Package System
17. Ethan Allen, Inc.
18. State of Hawaii Child Support Enforcement Agency
19. Victoria Apartments
20. AT&T Wireless Services, Inc.
21. Farmers Insurance Company
22. City of San Diego
23. Lewis Homes of California
24. Freedom Communications, Inc. d/b/a The Orange County Register
25. California Pizza Kitchen
26. Raytheon Company
27. Les Schwab Tire Centers of California, Inc.
28. Catholic Healthcare West
29. Kaiser Foundation Hospitals
30. Penske Logistics and Penske Truck Leasing
31. Conair
32. Container Connection of Southern California
33. Ashley Furniture/Stoneledge Furniture
34. Save Mart Supermarkets
35. PICO Enterprises, Inc. dba Phyle Inventory Control Specialist and PICS
36. Certified Class Counsel well over 100 settlement classes

Cohelan Khoury & Singer has obtained numerous verdicts, judgments, or settlements since September 1993. Listed below are examples of cases the firm has played a central role in the resolution of and which have received final approval by the Court:

- *Bennett v. Countrywide*, San Diego Superior Court, Case No. GIC840981 [expense reimbursement claim by commission employees];
- *Evans v. Washington Mutual Bank*, Orange County Superior Court Case No. 02CC15415 [expense reimbursement and wage deduction claim by commission employees];
- *Gonzalez, et al. v. Freedom Communications, Inc. d/b/a The Orange County Register*, Orange County Superior Court Case No. 03CC08756 [home delivery carriers misclassified as "independent contractors"];
- *Aravena v. Cisco Systems, Inc.*, Orange County Superior Court Case No. 07CC01367 [OT misclassification claim by IT employees]**;**
- *Venturini v. Genentech, Inc.*, San Francisco Superior Court Case No. CGC-09-492494 [OT misclassification claim by IT employees];
- *Durrani v. Western Digital Corporation, et al.*, Orange County Superior Court Case No. 30-2009-00268212 [OT misclassification claim by IT Employees];
- *Watson v. Raytheon Company*, United States District Court, Southern District of California Case No. 10CV0634 [Ot misclassification claim by IT employees];
- *Bills v. Sutter Health*, Alameda Superior Court Case No. RG09465894 [Ot misclassification claim by IT employees];
- *Smith v. California Pizza Kitchen*, San Diego Superior Court Case No. 37-2008-00083992 [OT misclassification claims by managers and assistant managers];
- *Dunn v. The Kroger Company, et al.*, Los Angeles Superior Court Case No. Case No. BC323252 [meal and rest break claims];
- *Gallen v. Gambro Healthcare, Inc.*, Orange County Superior Court Case No. 04CC00571 [OT claims by nurses];
- *Hohnbaum, et al. v. Brinker Restaurant Corp.*, San Diego Superior Court Case No. GIC834348 [meal and rest break claims];
- *Liberty Mutual Overtime Cases*, Los Angeles Superior Court Case No. J.C.C.P. 4234 [OT misclassification of Insurance Claims Handlers];
- *Leisinger-Reed, et al. v. Equinox Holdings, Inc., et al*., Los Angeles Superior Court Case No. BC481860 [unpaid wages, and meal and rest break claims by massage therapists, estheticians, and nail technicians];
- *Rite Aid Wage and Hour Cases*, Los Angeles Superior Court Case No. J.C.C.P. 4583 [OT, Meal and Rest Period Claims by Pharmacists]
- *Djukich v. Carwell, LLC*, Unites States District Court, Central District of California Case No. 13CV4455 BRO [unpaid wages claims by automotive technicians];

- *Laureano, Jr. et al. v. The Art of Shaving-FL, LLC*, Los Angeles Superior Court Case No. BC550093 [meal and rest break and overtime claims by non-exempt employees];
- *Martinez v. Alameda Health System*, Alameda Superior Court Case No. RG14719205 [unpaid wages by non-exempt employees];
- *Freeman v. Coast to Coast Manpower, LLC*, Los Angeles Superior Court Case No. BC543709 [unpaid wages, meal and rest break, and vacation pay claims by truck drivers];
- *Morales v. The Los Angeles Country Club*, Los Angeles Superior Court Case No. BC566493 [unpaid wages, meal and rest break, reporting and split shift pay, expense reimbursement and improper wage deductions claims by non-exempt employees];
- *Bradley v. Safe Haven Security Services, Inc.*, San Diego Superior Court Case No. 37-2015-00019576-CU-OE-CTL [expense reimbursement and wage statement claims by Sales Representatives]; and
- *Czuchaj, et al. v. Conair Corporation,* United States District Court, Southern District of California Case No. 13CV1901 BEN (RBB) [implied warranty of merchantability of certain models of hair dryers], among others.

**TIMOTHY D. COHELAN**, Founding Partner, author of *Cohelan on California Class Actions* (Thomson Reuters, 1997-2019, updated annually), is the son of the late Jeffery Cohelan, former California Congressman. He is a 1974 graduate of California Western School of Law, where he was a law review editor. Mr. Cohelan served as an Officer in the U.S. Navy from 1968 to 1971 and received a B.A. from the University of Arizona in 1967. Mr. Cohelan was admitted to the State Bar of California in 1974, and was admitted to the Bar in the District of Columbia in 1996. He also served as the Chairman of the San Diego Coast Regional Commission from 1978 to 1981. From 1982 to 2006, Mr. Cohelan served the San Diego Superior Court as a Judge Pro Tem, hearing and ruling on hundreds of matters during his service.

Timothy Cohelan was named a "California Lawyer of the Year" by California Lawyer Magazine (Clay Award) in 1996. Mr. Cohelan's memberships include former member of the Board of Governors of the Association of Business Trial Lawyers for San Diego County, member of the American Bar Association and the Consumer Attorneys of California and San Diego County Bar Association. His main areas of practice include class action, civil, wage and hour and antitrust cases.

Mr. Cohelan served as the Chair of San Diego Volunteer Lawyer Program, a non-profit successor of Legal Aid, from 2015 through 2018 and currently sits on the Board as past Chair. As an advocate for the homeless, Mr. Cohelan received San Diego County Bar Association honors for community service in connection with his work on behalf of SDVLP on an important class action case impacting homeless shelter locations.

**ISAM C. KHOURY,** Founding Partner, is a 1970 graduate of the University of California at San Diego and received a law degree from Hastings School of Law in 1973. Mr. Khoury is a member of the State Bar of California, admitted in 1974, the San Diego County Bar Association, Consumer Attorneys of San Diego and Consumer Attorneys of California. He has successfully litigated numerous complex civil matters to verdict, jury and non-jury. His main areas of practice include civil tort litigation, personal injury, business torts, antitrust and class action cases.

In recent years, Mr. Khoury has emphasized wage and hour class action matters having assisted in the litigation to judgement or settlement of over 150 wage and hour class actions. The Southern California Super Lawyers Magazine has selected Mr. Khoury as a southern California/San Diego Super lawyer for the years 2011 through 2017. He has been approved as a CLE lecturer and has participated in seminars on class action wage and hour issues, the complexities of mediation, and the procedural requirements involved in class action settlements. He has argued appeals and been co-counsel in several matters of major import including California Supreme Court decisions including the *Brinker* decision clarifying California meal and rest break requirements and *Harris v Liberty Mutual* which defined parameters for the use of the administrative exemption.

**MICHAEL D. SINGER**, Managing Partner, is a 1984 graduate of U.C. Hastings Law School. He graduated magna cum laude from San Francisco State University in 1980 with a B.A. in English. He was admitted to the State Bar of California in 1984 and the State Bar of Colorado in 2001. For over thirteen years, he served as co-chair and liaison to the California Employment Lawyers Association (CELA). He is a member of the San Diego County Bar Association. He is the author of the opening chapter overview on California wage and hour law and PAGA Claim chapter in *California Wage and Hour Law: Compliance and Litigation* (CEB 2010-2019). He was named to the Daily Journal 2012, 2013 and 2018 list of the Top California Labor and Employment Attorneys. Mr. Singer serves on the Legal Aid at Work Board of Directors. His main areas of practice include employment wage and hour, consumer, and unfair competition class actions and appellate practice.

Mr. Singer regularly contributes amicus curiae briefs on class action and employment issues in the California Supreme Court and Courts of Appeal. In his capacity as Amicus lesion for CELA, he coordinated, drafted or co-drafted amicus letters and briefs on a wide range of labor law issues in the rapidly developing decisional law, supporting Review in the Supreme Court, and publication or depublication of Court of Appeal decisions in the following cases since January 1, 2008: *Chindarah v. Pick up Stix*, 171 Cal. App. 4th 796 (2009), California Superior Court Case No. S171864 [regarding propriety under Labor Code section 206.5 and California Rules of Court of settling with absent class members without court supervision prior to class certification] (Supporting Petition for Review; Review Denied); *Lu v Hawaiian Gardens Casino*, California Supreme Court Case No. S171442 [whether a private cause of action exists under the Labor Code for tip pooling

violations](Review Granted); *Brinkley v Public Storage*, 198 P.3d 1087 (2009), California Supreme Court Case No. S168806 [denying class certification of rest and meal period claims](Review Granted); *Estrada v. Fedex Ground Package System*, 154 Cal. App. 4th 1 (2007), California Supreme Court Case No. S156595 [judgment finding drivers entitled to expense reimbursement] (supporting opposition to Review; Review denied); *Group Brewer v Premier Golf*, 168 Cal. App. 4th 1243 (2008), California Supreme Court Case No. 169666 [holding punitive damages unavailable in connection with wage claims] (supporting Petition for Review; Review Denied); *Christler v. Express Messenger*, California Supreme Court Case No. S171439 [jury verdict finding employees independent contractors] (supporting Petition for Review; Review Denied); *Watkins v. Wachovia*, 172 Cal. App. 4th 1576 (2009), California Court of Appeal Case No. B199982 [affirming dismissal of appeal following denial of class certification based on employee severance agreement resolving claims] (depublication request pending); *Ghazaryan v. Diva Limousine*, 169 Cal. App. 4th 1524 (2008), California Court of Appeal Case No. B201509 [reversing class certification denial] (publication request granted); *Bufil v Dollar Financial Group*, 162 Cal. App. 4th 1193 (2008), California Court of Appeal Case No. A118143 [reversing certification denial of meal period claims applying collateral estoppels] (publication request granted); *Kurian v. U.S. Mortgage Capital*, California Court of Appeal Case No. B201013 [regarding propriety of wage compromises under Labor Code section 206.5] (publication request denied); *BCBG Overtime Cases*, 163 Cal. App. 4th 1293 (2008), California Supreme Court Case No. S165348 [propriety of defendant bringing preemptive motion to deny class certification] (depublication request denied); *Kenny v Supercuts*, 252 F.R.D. 641 (2008), United State District Court Case No. C 06-07521 CRB; *Salazar v Avis*, 251 F.R.D. 529 (2008), United State District Court Case No. 07-CV-0064-IEG-WMC [denying certification of rest and meal period claims] (request that 9th Circuit Court of Appeals certify question to the California Supreme Court denied); and *Methodist Hospital v Superior Court*, California Court of Appeal Case No. B208295 [ruling a private right of action exists for rest and meal period claims under Labor Code section 226.7] (supporting opposition to Petition for Writ; Writ denied), among many others.

Mr. Singer is a contributor to the Los Angeles Daily Journal, having authored articles on the California Court of Appeal decision in *Parris v. Superior Court* regarding communications with absent class members (May, 2003), SB 796 (Dunn, D-Garden Grove), California's Private Attorneys General Law providing employees a private right of action against employers for civil penalties under the Labor Code (October 2003), the California Court of Appeal decision in *Bell v. Farmers Ins. Exch*. and its guidance for the use of statistical sampling and extrapolation to prove aggregate class-wide damages (February 2004), and the then-pending Supreme Court decision regarding Sav-On and Overtime Class Suits.

He is an MCLE lecturer on class action procedure and wage and hour issues and has argued appeals in the Second, Third, and Ninth Federal Circuit Courts of Appeals, as

well as the Second and Fourth California District Courts of Appeal. Published decisions include *Hicks v. Kaufman and Broad Home Corp.* (2001) 89 Cal.App.4th 908 (reversing the denial of certification of a class of home buyers for construction defects); *Hicks v. Superior Court* (2004) 115 Cal.App.4th 77 (challenging implied construction warranty disclaimers); *Federal Home Loan Mortgage Corp. v. La Conchita Ranch Co.* (1998) 68 Cal.App.4th 856 (defending challenge to attorney disqualification); and *Save Our NTC, Inc. v. City of San Diego* (2003) 105 Cal.App.4th 285 (challenging private development of former naval training center). He also contributed to the briefing of *Aguilar v. Atlantic Richfield, et al.* (2001) 25 Cal.4th 826 (summary judgment of antitrust claim of certified class of 20 million California drivers). He is one of the very few attorneys in the State of California to have tried a wage and hour class action involving contested procedures regarding the use of sampled and statistical evidence.

**DIANA M. KHOURY,** Partner, received a law degree from Western State University in 1986 and is a graduate of San Diego State University, where she received her Bachelors of Science degree in 1975. She is a member of the State Bar of California, admitted in 1987. Since admission to the bar, Ms. Khoury has been a member of the San Diego County Bar Association, Consumer Attorneys of San Diego, Consumer Attorneys of California, American Bar Association and the American Association of Justice. From 2010 through 2016, Ms. Khoury served on the Board of Directors for Consumer Attorneys of San Diego. Since 2013, Ms. Khoury has served on the Board of Directors for the San Diego County Bar Foundation, ("SDCBF"), the 501(c) (3) charitable arm of the San Diego County Bar Association. Ms. Khoury has been selected by her peers based on ethics, experience and reputation as a "Super Lawyer" in Civil Litigation from 2010 through the present by the Southern California Super Lawyers Magazine, and is also AV-Preeminent rated by Martindale –Hubbell, the highest possible rating for a lawyer.

Upon being admitted to the State Bar of California, a major focus of Ms. Khoury's practice has been on consumer rights litigation, and has included civil tort litigation, personal injury, and business torts. Throughout her career, she has taken numerous jury trials to verdict. She has been a lecturer for Mandatory Continuing Legal Education regarding class actions. Ms. Khoury currently represents employees in wage and hour class actions, where her recognized specialty is class action resolution.

**JEFF GERACI,** Partner, is a 1982 graduate of Pitzer College with a degree in Sociology. He is a 1990 graduate of the University of San Diego School of Law, and has practiced employment law for over seventeen years. He has handled matters in California state and federal trial and appellate courts, and before many administrative agencies, including the California Division of Labor Standards Enforcement, the Department of Fair Employment and Housing, the Equal Employment Opportunity Commission, the California State Personnel Board, the California Board of Psychology, and the California State Commission for Teacher Credentialing.

Mr. Geraci has provided counseling and representation in all areas of employment law, including wrongful termination, employment discrimination, sexual harassment, and wage and hour laws. His practice is now focused on class actions, including wage and hour class action litigation and consumer actions.

Mr. Geraci's published decisions include *McAlindin v. County of San Diego* (1999) 192 F.3d 1226 [reversing summary judgment in a disability discrimination case] and *Araiza v. National Steel and Shipbuilding* (S.D. Cal. 1997) 973 F. Supp. 963 [denying mandatory arbitration of employment claims under a collective arbitration agreement].

Mr. Geraci is a member of the Labor and Employment Law sections of the California and San Diego County Bar Associations, and has served as Editor of the Employment Law column for the Consumer Attorneys of San Diego monthly publication, *Trial Bar News*. He is a past recipient of the Wiley W. Manuel Award for Pro Bono Service.

**J. JASON HILL**, Partner, is a 1992 graduate of the University of Illinois at Urbana-Champaign and holds a B.A. in Philosophy, Political Science and Communications. In 1995, he received his J.D. degree from California Western School of Law, where he was a member of the Law Review an International Law Journal, as well as editor of the Telecommunications Law Forum. Currently, Mr. Hill is admitted to the bar in both California and Illinois, and is a broker licensed by the California Department of Real Estate. He maintains memberships not only with the San Diego County Bar Association, but also the National Association of Realtors, the California Association of Realtors and the San Diego Association of Realtors.

Prior to joining Cohelan Khoury & Singer, Hill represented large institutional clients in a variety of civil litigation settings, including insurance coverage, employment law, health care law, general and professional liability, as well as, premises and product liability claims. He has particular emphasis on all aspects of professional liability claims in a healthcare setting, as well as claims brought pursuant to the Emergency Medical Treatment and Active Labor Act (EMTALA) and the Elder Abuse and Dependent Adult Civil Protections Act (EADACPA). Mr. Hill is also an accomplished appellate practitioner and has briefed and/or argued over 40 matters in both state and federal courts of appeal, yielding several published decisions on a range of legal issues.

**MARTA MANUS**, Attorney, is a 2008 graduate of California Western School of Law. She graduated with honors and received a Bachelor of Arts in Psychology from California State University Northridge. Ms. Manus has been a member of the State Bar of California since her admission in December 2008. She has practiced before all District Courts in the state of California as well as the Fourth District Court of Appeal and the U.S. Court of Appeals for the Ninth Circuit.

Ms. Manus has been successfully litigating employment law cases for nearly a decade, representing employees in all aspects of labor and employment law matters, including employment discrimination, wrongful termination, retaliation, and wage and hour class action lawsuits. Her practice focuses primarily on employee-side wage and hour class actions. Ms. Manus is a member of the Labor and Employment Law sections of the California and San Diego Bar Associations as well as the Federal Bar Association. Ms. Manus was recognized by San Diego Super Lawyers as a Rising Star in 2015, 2016, and 2017.

**KRISTINA DE LA ROSA**, Attorney, was born and raised in San Diego. She graduated from UC San Diego in 2006 with a B.A. in Psychology, where she was also a 4- year member of the Women's NCAA intercollegiate soccer team. She received her law degree from Santa Clara Law School in 2011 and was admitted to the California State Bar in the same year.

During law school, she interned for Equal Rights Advocates, the ACLU of Southern California, and externed for the Hon. John F. Herlihy (Ret.). She volunteered for the Katherine and George Alexander Community Law Center Workers' Rights workshops and earned the Witkin Award for Excellence and the Richard S. Rosenberg Prize for Excellence in Labor Law. Immediately after passing the bar, she began representing employees in class action wage and hour litigation. She also volunteered for the California Rural Legal Assistance, Inc., assisting farm workers with filing wage and worker's compensation claims. Ms. De La Rosa remains committed to protecting employee rights and represents employees and consumers in class and collective actions across California, helping them recover millions of dollars in unpaid wages, restitution and penalties. Ms. De La Rosa is a member of CELA.