## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | EDCV 19-641-GW-SHKx | Date | August 5, 2020 |
|---|---|---|---|
| Title | *Jose Contreras v. Americold Logistics, LLC* | | |

| Present: The Honorable | GEORGE H. WU, UNITED STATES DISTRICT JUDGE | |
|---|---|---|
| Javier Gonzalez | None Present | |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| None Present | None Present |

**PROCEEDINGS:     IN CHAMBERS - ORDER**

      Attached hereto is the Court's Tentative Ruling on Plaintiff's Motion for Order Granting Class Action Settlement [30]. The Court sets a hearing for August 10, 2020 at 8:30 a.m. Counsel are to appear telephonically by contacting the court clerk at javier_gonzalez@cacd.uscourts.gov.

|  | : |  |
|---|---|---|
| Initials of Preparer | JG | |

*Jose Contreras v. Americold Logistics, LLC*; Case No. 2:19-cv-00641-GW-(SHKx)
Tentative Ruling on Motion for Preliminary Approval of Class Action Settlement


I.      **Background**

        A.  Introduction

        Plaintiff Jose Contreras ("Plaintiff") brought this putative class action against his former employer, defendant Americold Logistics, LLC ("Americold"), alleging multiple wage and hour violations under the California Labor Code.  Plaintiff seeks to recover unpaid minimum, regular, and overtime wages for himself and all others employed by Americold in California as hourly, nonexempt employees covered by the Fair Labor Standards Act ("FLSA").

        The parties engaged in mediation, and at the post-mediation status conference issued a notice that settlement had been reached.  *See* Docket No. 27.  Plaintiff now moves the Court for an order preliminarily approving the proposed settlement as fair, adequate, and reasonable as required by Federal Rule of Civil Procedure ("FRCP") 23(3).  *See* Docket No. 30-1 ("Motion" or "Mot.").

        B.  Factual Background

        Plaintiff alleged the following against Americold in the initial Complaint: (1) failure to pay minimum and regular wages in violation of California Labor Code ("Labor Code") §§ 204, 1194, 1194.2, 1197; (2) failure to pay overtime wages in violation of Labor Code §§ 510, 1194; (3) failure to provide meal periods or pay in lieu thereof, in violation of Labor Code §§ 226.7, 512; (4) failure to provide rest periods or pay in lieu thereof, in violation of §§ 226.7, 512; (5) failure to provide accurate itemized wage statements in violation of Labor Code §§ 226, 1174; (6) failure to pay wages owed at termination, in violation of Labor Code §§ 201-03; (7) violations of California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200 *et seq*; (8) Private Attorneys General Act ("PAGA") penalties for failure to pay minimum and overtime wages, in violation of Labor Code §§ 510, 1194, 1197, and the applicable Industrial Welfare Commission wage order; and (9) PAGA penalties for unlawful deduction of wages in violation of Labor Code §§ 221, 223.  *See* First Amended Complaint ("Operative Complaint" or "Compl."), Docket No. 20.

        The Operative Complaint alleges the following facts.  Americold is a Delaware limited liability company that provides temperature-controlled warehousing and other related services to

1

food and beverage retailers and manufacturers.  Compl. ¶ 11.  Plaintiff and all proposed class members − hourly, nonexempt workers − were Americold employees covered by the California Labor Code and applicable IWC wage orders which required Americold to pay them minimum and overtime compensation, as well as provide meal and break periods.  *Id.* at 20.  However, Americold routinely underpaid them, through a group of different practices, and did not have a compliant meal-and-break policy.

According to Plaintiff, Americold undercut the required overtime rate of pay.  *Id.* at 22.  Under California law, overtime pay is set at 1.5 times the employee's "regular rate of pay."  *Id.* at 21.  The regular rate of pay is not the same as an employee's normal hourly rate of pay.  Plaintiff alleges that the IWC adopted the definition of "regular rate" set out in the FLSA, which defines the regular rate to include "all remuneration for employment paid to, or on behalf of, the employee."  29 U.S.C. § 27(e).  Americold underpaid its employees by incorrectly excluding non-discretionary incentive pay and bonuses in the regular rate.  Compl. ¶ 22.

Americold also underpaid employees by using a rounding policy in counting the hours worked by its employees.  By undercounting shifts that exceeded 8 hours in one day or 40 hours in one week, Americold failed to pay all of the required overtime wages.  Compl. ¶ 25.

Finally, Americold failed to provide an adequate meal-and-break policy as required by California law.  Americold's policy stated: "Associates will be provided a fifteen (15)-minute rest break for each four (4) hours of scheduled work . . . . A thirty (30)-minute unpaid meal break will be granted to associates scheduled to work at least (6) hours in the day. Associates working over ten (10) hours per day will be given an additional fifteen minute rest break."  Compl. ¶ 26.  Plaintiff alleges that Americold's policy was inadequate because it provided meal and break periods based on scheduled hours of work, instead of actual hours worked.  *Id.*

Plaintiff now seeks to recover these unpaid wages on behalf of himself and the proposed class of "[a]ll individuals employed by [Americold] in the State of California as hourly non-exempt employees at any time four years prior to February 22, 2019 until the time of trial in this action."  Compl. ¶ 39.

C.  Procedural History and the Proposed Settlement

Plaintiff first filed this putative class action in San Bernardino County Superior Court on February 22, 2019.  *See* Docket No. 1.  Americold answered the complaint and then removed it to this Court on April 10, 2019.  *Id.*   In parallel with this, on May 2, 2019, Plaintiff filed a

similar suit against Americold pursuant to California's Private Attorney General Act ("PAGA"), Labor Code § 2698 *et seq.* *See* Mot. at 8. The case was filed in San Bernardino County Superior Court, Case No. CIVDS 1913523 ("*Contreras II*").

The Court granted the parties' stipulation to grant Plaintiff leave to file an amended complaint, which Plaintiff did on June 17, 2019. It is now the Operative Complaint. *See* Comp. The Operative Complaint incorporated the PAGA claims in *Contreras II*, which was later dismissed. In the lead-up to the initial status conference, the parties discussed the possibility of settlement. They sought and received an extension of the class-certification briefing schedule to allow them more time to prepare for a mediation session, which they attended on December 18, 2019. *See* Docket No. 25. By the end of the mediation, the parties reached agreement on the principal terms of possible settlement, and indicated in their report to the Court that they were working on a formal agreement to submit to the Court for preliminary approval. *Id.* The proposed settlement is now before the Court in the instant motion.

The Joint Stipulation of Class Action Settlement and Release ("Settlement"), Docket No. 30-2, Ex. 1, provides the following details about the proposed settlement. There are two defined time periods. The first, the Class Period, is defined as beginning on February 22, 2015, and running through the earlier of: (1) 120 days after the date of mediation (December 18, 2019) and (2) the date of preliminary approval of the class settlement (the "End Date"). *Id.* at 4. The second, the PAGA Period, is a subset of the Class Period defined as beginning on February 22, 2018, and running through the End Date. *Id.* at 6. The proposed class ("Settlement Class") is defined as "[a]ll individuals employed by Americold in the State of California as hourly non-exempt employees" during the Class Period. *Id.* at 3. The parties agree to release Americold from all claims that Plaintiff has brought or could have brought in the instant action based on the facts alleged in the Operative Complaint. *See id.* at 7-8. In return, Americold will pay a maximum payment of $2,500,000.00 (the "Gross Settlement Amount"). *Id.* at 2.

The Gross Settlement Amount will be allocated as follows:

- Plaintiff will be paid an amount up to $10,000 (the "Class Representative Service Award").
- The settlement administrator will be paid an amount up to $20,000 (the "Settlement Administration Cost").
- Plaintiff's counsel will be paid an attorneys' fee award of up to $750,000 – 30%

of the Gross Settlement Amount (the "Attorneys' Fee Award").

- Plaintiff's counsel will also be reimbursed up to $20,000 for attorneys' costs (the "Attorneys' Cost").

- An amount of $200,000 is set aside under PAGA's penalty provisions (the "PAGA Penalty"): 75% of the amount will be paid to California's Labor and Workforce Development Agency (the "LWDA Payment"), and 25% will be paid to the Settlement Class (the "PAGA Payment").

- The Net Settlement Amount (estimated at $1,500,000), which is defined as the Gross Settlement Amount less: (1) the Class Representative Service Award; (2) the Settlement Administration Cost; (3) the Attorneys' Fee Award and Attorneys' Cost; and (4) the LWDA Payment, is allocated on a pro rata basis among participating Settlement Class members based on how long they worked at Americold during the Class Period.

- The PAGA Payment is allocated on a pro rata basis among participating Settlement Class members based on how long they worked for Americold during the PAGA Period.

*Id.* at 2-11.

## II.     Legal Standard

Under Ninth Circuit precedent, there is "a strong judicial policy that favors settlements, particularly where complex class action litigation is concerned."  *Allen v. Bedolla*, 787 F.3d 1218, 1223 (9th Cir. 2015) (internal quotation marks omitted).  Nonetheless, Federal Rule of Civil Procedure 23(e) requires district courts to approve class action settlements.  "[S]ettlement class actions present unique due process concerns for absent class members[.]"  *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998) *overruled on other grounds by Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011); *see also Allen*, 787 F.3d at 1223 ("[T]he district court has a fiduciary duty to look after the interests of those absent class members.").  In instances where parties arrive at a settlement before class certification, "courts must peruse the proposed compromise to ratify both the propriety of the certification and the fairness of the settlement." *Staton v. Boeing Co.*, 327 F.3d 938, 952 (9th Cir. 2003).

Preliminary approval of class action settlements invokes a two-step inquiry.  *In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prods. Liab. Litig.*, MDL No. 2672-CRB-

(JSC), 2017 WL 672727, at *12 (N.D. Cal. Feb. 16, 2017).  At the first step, courts decide if a class exists.  *Staton*, 327 F.3d at 952.  "Such attention is of vital importance, for a court asked to certify a settlement class will lack the opportunity, present when a case is litigated, to adjust the class, informed by the proceedings as they unfold."  *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997).

At the second step, courts consider "whether a proposed settlement is fundamentally fair, adequate, and reasonable."  *Hanlon*, 150 F.3d at 1026.  If the parties settle before class certification, the Ninth Circuit requires "a more probing inquiry than may normally be required under Rule 23(e)."  *Id.*  During the preliminary approval stage, courts "determine whether the settlement falls 'within the range of possible approval.' "  *Booth v. Strategic Realty Tr., Inc.*, 2015 WL 3957746, at *6 (N.D. Cal. June 28, 2015) (quoting *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1080 (N.D. Cal. 2007)).  Courts examine "the settlement taken as a whole, rather than the individual component parts . . . for overall fairness."  *Hanlon*, 150 F.3d at 1026. Courts cannot "delete, modify or substitute certain provisions.  The settlement must stand or fall in its entirety."  *Id.* (internal quotation marks and citation omitted).

## III.    Discussion

The Court begins by deciding whether class certification is warranted.  The proponent of class treatment bears the burden of demonstrating that class certification is appropriate.  *See Meyer v. Portfolio Recovery Assocs., LLC*, 707 F.3d 1036, 1041 (9th Cir. 2012); *In re Northern Dist. of California, Dalkon Shield IUD Prod. Liab. Litig.*, 693 F.2d 847, 854 (9th Cir. 1982). Before certifying a class, the trial court must conduct a "rigorous analysis" to determine whether the party seeking certification has met the prerequisites of Rule 23 of the Federal Rules of Civil Procedure ("Rule 23").  *Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227, 1233 (9th Cir. 1996).

Rule 23 requires the party seeking certification to satisfy all four requirements of Rule 23(a)[1] and at least one of the subparagraphs of Rule 23(b).[2]  *Id.* at 1234.  "A party seeking class

---

[1] Rule 23(a) requires that the party/parties seeking certification show:

    (1)     the class is so numerous that joinder of all members is impracticable;
    (2)     there are questions of law or fact common to the class;
    (3)     the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
    (4)     the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a).

[2] Here, Plaintiff seeks certification under Rule 23(b)(3).  *See* Motion at 24.

certification must affirmatively demonstrate his compliance with the Rule – that is, he must be prepared to prove that there are *in fact* sufficiently numerous parties, common questions of law or fact, etc." *Wal-Mart Stores*, 564 U.S. at 350. The Court is permitted to consider any material necessary to its determination, though it should not go so far as to engage in a trial of the merits. *Id.* at 350-51 (noting that the "rigorous analysis" required at class certification will "[f]requently . . . entail some overlap with the merits of the plaintiff's underlying claim"); *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 981 (9th Cir. 2011) ("[I]t is not correct to say a district court *may* consider the merits to the extent that they overlap with class certification issues; rather, a district court *must* consider the merits *if they overlap* with the Rule 23(a) requirements.") (emphasis added); *Marlo v. United Parcel Serv., Inc.*, 639 F.3d 942, 949 (9th Cir. 2011); *Vinole v. Countrywide Home Loans, Inc.*, 571 F.3d 935, 947 n.15 (9th Cir. 2009); *Blackie v. Barrack*, 524 F.2d 891, 900-01 & n.17 (9th Cir. 1975); *Sali*, 889 F.3d at 630 ("At this preliminary stage, a district court may not decline to consider evidence solely on the basis that the evidence is inadmissible at trial.").

    A.  Numerosity

Rule 23(a)(1) requires a demonstration that "the class is so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). "In general, courts find the numerosity requirement satisfied when a class includes at least 40 members." *Rannis v. Recchia*, 380 F. App'x 646, 651 (9th Cir. 2010). Here, the proposed settlement class includes a predicted 1,422 workers. *See* Mot. at 17. Given this large number, the Court finds the numerosity requirement satisfied.

    B.  Commonality

Rule 23(a)(2) requires "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). The commonality requirement has been permissively construed. *See Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998). Although there must be common questions of law or fact, it is not necessary that all questions of law or fact be common. *See id.* ("The existence of shared legal issues with divergent factual predicates is sufficient, as is a common core of salient facts coupled with disparate legal remedies within the class."); *see also Staton v. Boeing Co.*, 327 F.3d 938, 953-57 (9th Cir. 2003). There need only be a single common question. *See Dukes*, 564 U.S. at 359. Crucially, "[w]hat matters to class certification . . . is not the raising of common 'questions' – even in droves – but, rather the capacity of a

classwide proceeding to generate common answers apt to drive the resolution of the litigation. Dissimilarities within the proposed class are what have the potential to impede the generation of common answers."  *Id.* at 350 (omitting internal quotation marks) (quoting Nagareda, <u>Class Certification in the Age of Aggregate Proof</u>, 84 N.Y.U. L. Rev. 97, 131-32 (2009)).

> Plaintiff's argument for commonality simply states:

> Plaintiff alleges numerous common questions, including whether Americold failed to pay minimum, regular and/or overtime wages for all hours worked; whether Americold failed to pay all overtime wages due by failing to properly calculate the regular rate of pay; whether Americold failed to provide compliant rest breaks and meal periods or pay one hour's pay in lieu of thereof; and whether Americold failed to pay all wages due at separation of employment.

Mot. at 23.  If Americold had in place a single meal-and-break policy that applied to all of the Settlement Class members, then Plaintiff's allegation that Americold's meal-and-break policy was not compliant with California law would be a common question.  This is what Plaintiff claimed in the Operative Complaint, which alleged that a uniform Americold policy stated: "Associates will be provided a fifteen (15)-minute rest break for each four (4) hours of scheduled work. . . . A thirty (30)-minute unpaid meal break will be granted to associates scheduled to work at least (6) hours in the day.  Associates working over ten (10) hours per day will be given an additional fifteen minute rest break."  Compl. ¶ 26.  However, the Motion states that Americold operates warehouses at fourteen sites across California – sites that the Settlement Class draws its members from – and that "in almost every location, one or more different collective bargaining agreements ("CBAs") apply to a majority of employees in that facility."  Motion at 1-2.  Plaintiff concludes that "[a] sizeable majority of the putative class is covered by one of a variety" of these CBAs and then goes on to observe that "[e]ach site has *numerous idiosyncrasies in management, policies and meal and rest period practices*."  *Id.* at 2 (emphasis added).  It appears to the Court that idiosyncrasies in the meal-and-break practices among the various CBAs may splinter any common question about Americold having a compliant meal-and-break policy.  These idiosyncrasies may also affect the other common questions that Plaintiff argues exist here.  At this point, the Court finds that Plaintiff's characterization of the Settlement Class's common questions is too broad.  The Court asks that Plaintiff provide a more detailed explanation of the commonality issue, and in particular how it is affected by the CBAs.

> C.  <u>Typicality</u>

> Rule 23(a)(3) requires that the claims or defenses of the representative parties are typical

of the claims or defenses of the class.  "The purpose of the typicality requirement is to assure that the interest of the named representative aligns with the interests of the class."  *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992).  "Typicality refers to the nature of the claim or defense of the class representative, and not to the specific facts from which it arose . . . ."  *Id.* (citation and internal quotation marks omitted).  "The test of typicality is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct."  *Id.* (citation and internal quotation marks omitted); *see also General Tel. Co. of the Sw. v. Falcon*, 457 U.S. 147, 156 (1982) ("*Falcon*") (indicating that class representatives "must be part of the class and possess the same interest and suffer the same injury as the class members"); O'Connell & Stevenson, *Rutter Group Practice Guide: Civil Procedure Before Trial: Ch. 10 – Class Actions*, ¶ 10:289, at 10-93 (The Rutter Group 2018) ("A plaintiff's claim is typical if it: arises from the same event or practice or course of conduct that gives rise to the claims of other class members; and is based on the same legal theory as their claims.").  The representative plaintiffs' claims need not be identical to those of the class, but rather need only be "reasonably co-extensive with those of absent class members . . . ."  *Hanlon*, 150 F.3d at 1020.  In practice, "[t]he commonality and typicality requirements of Rule 23(a) tend to merge."  *Falcon*, 457 U.S. at 157 n.13.

The Court finds that Plaintiff has not adequately explained how his claims are typical of the Settlement Class.  Plaintiff states only that "Plaintiff's claims are typical as all [Settlement Class] members were subject to the same rounding policies, the same required duties pre and post-shift, the same method of calculation of overtime wages; not paid all wages due at termination of employment, and inaccurate wages statements as a result."  Mot. at 17.  This conclusory statement is an insufficient basis for a finding of typicality.  The Court asks for an explanation of how the policies that Plaintiff claims applied uniformly to the Settlement Class were affected by the various CBAs and idiosyncrasies in management practices.  Without it, the Court cannot conclude that Plaintiff satisfies the typicality requirement.

      D. <u>Adequacy</u>

Representative parties must also fairly and adequately protect the interests of the class. *See* Fed. R. Civ. P. 23(a)(4).  Generally speaking, "[w]hether the class representative[] satisf[ies] the adequacy requirement depends on the qualifications of counsel for the representatives, an

absence of antagonism, a sharing of interests between representatives and absentees, and the unlikelihood that the suit is collusive." *Rodriguez v. Hayes*, 591 F.3d 1105, 1125 (9th Cir. 2010) (omitting internal quotation marks) (quoting *Walters v. Reno*, 145 F.3d 1032, 1046 (9th Cir. 1998) and *Crawford v. Honig*, 37 F.3d 485, 487 (9th Cir. 1994)); *see Ellis*, 657 F.3d at 985 ("To determine whether named plaintiffs will adequately represent a class, courts must resolve two questions:  '(1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?'"); *see also Sali*, 889 F.3d at 634; *Staton*, 327 F.3d at 957; *Local Joint Executive Bd. of Culinary/Bartender Trust Fund v. Las Vegas Sands, Inc.*, 244 F.3d 1152, 1162 (9th Cir. 2001) ("The record indicates clearly that [the class representative] understands his duties and is currently willing and able to perform them.  The Rule does not require more.").

At this point, the Court is not aware of any adequacy problems.  Neither Plaintiff nor Plaintiff's counsel have any apparent conflicts of interest.  Plaintiff states that he "has no conflict of interest with class members."  Mot. 24.  Therefore, the Court is inclined to find that the adequacy requirement is met.

E.  Predominance and Superiority

Because Plaintiff seeks to certify a class under Rule 23(b)(3), the Court must analyze whether the proposed class satisfies the predominance and superiority inquiry.  Rule 23(b)(3) provides that:

> [a] class action may be maintained if Rule 23(a) is satisfied and if:
>
> . . .
>
> the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.  The matters pertinent to these findings include:
>
> (A) the class members' interests in individually controlling the prosecution or defense of separate actions;
>
> (B) the extent and nature of any litigation concerning the controversy already begun by or against class members;
>
> (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and
>
> (D) the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b)(3).  "[A]n individual question is one where members of a proposed class will need to present evidence that varies from member to member, while a common question is

9

one where the same evidence will suffice for each member to make a prima facie showing or the issue is susceptible to generalized, class-wide proof." *Torres v. Mercer Canyons Inc.*, 835 F.3d 1125, 1134 (9th Cir. 2016) (quoting *Tyson Foods v. Bouaphakeo*, 136 S. Ct. 1036, 1045 (2016)).

The predominance test is "far more demanding" than the commonality requirement under Rule 23(a)(2). *Amchem Prods. v. Windsor*, 521 U.S. 591, 624 (1997). The Court already found Plaintiff's explanation of why the commonality requirement was met insufficient, because it failed to address the Court's concern that the various CBAs would splinter the claimed common questions of law and fact. Plaintiff's explanation of why the predominance requirement is satisfied also does not address the CBAs of the idiosyncrasies in management practices, simply stating that "[t]here is no dispute all members of the [Settlement Class] were subject to the same policies throughout the Class Period." Mot. at 24. Because of this, the Court finds that the predominance requirement has not been met.

## IV.     Conclusion

Because the Court finds that Plaintiff has not sufficiently shown that all of Rule 23(a)'s requirements are met and that the predominance and superiority requirement of Rule 23(b)(3) is met, the Court concludes that certification of the Settlement Class is not warranted at this time. Given that that the class cannot be certified based on the Motion, the Court will not assess whether the Settlement is "fundamentally fair, adequate and reasonable" under the specific factors laid out in Rule 23(e)(2).

Based on the foregoing discussion, the Court **DENIES** the motion.